GARFIELD HEIGHTS CITY SCHOOL DISTRICT, APPELLEE,
v. STATE BOARD OF EDUCATION ET AL., APPELLANTS.

[Cite as *Garfield Hts. City School Dist. v. State
Bd. of Edn.* (1995), 71 Ohio St.3d 590.]

(No. 93-1929—Submitted January 11, 1995—Decided March 8, 1995.)

*Arter & Hadden, Tom McDonald, Irene Keyse–Walker* and *Sonali Busta-mante Wilson,* for appellee.

*Betty D. Montgomery,* Attorney General, *Christopher M. Culley, Karin W. Rilley* and *John P. Ware,* Assistant Attorneys General, for appellant State Board of Education.

*George S. Crisci,* for appellant Cleveland City School District Board of Education.

---

ALICE ROBIE RESNICK, J.  The determinative issue is whether the receiving school district may reject a transfer of territory under R.C. 3311.24 after a proposal to transfer the territory has been approved by the State Board.

The General Assembly has enacted in R.C. Chapter 3311 statutory procedures governing the creation and reorganization of school districts.  In particular, R.C. Chapter 3311 contains various provisions relative to territorial changes and a particular procedure for each type of transfer of territory.  See, *e.g.,* R.C.

3311.06, 3311.22, 3311.231, 3311.24, 3311.26, 3311.37 and 3311.38. The controlling section in the case *sub judice* is R.C. 3311.24, which provides the mechanism by which territory is transferred from a city or exempted village school district to an adjoining city, exempted village or county school district.

Under former R.C. 3311.24,[1] such a transfer may be initiated by "a petition, signed by seventy-five per cent of the qualified electors residing within that portion of a city or exempted village school district proposed to be transferred voting at the last general election." When such a transfer is requested, "the board of education of the district in which such proposal originates shall file such proposal, together with a map showing the boundaries of the territory proposed to be transferred, with the state board * * *." The State Board is then required to "either approve or disapprove [the] proposed transfer of territory * * * * and notify, in writing, the boards of education of the districts affected by such proposed transfer of territory of its decision."

The section provided further as follows:

"If the decision of the state board of education is an approval of the proposed transfer of territory then the board of education *of the district in which the territory is located shall * * * adopt a resolution transferring the territory* and shall forthwith submit a copy of such resolution to the treasurer of the board of education of the city, exempted village, or county school district to which the territory is transferred. *Such transfer shall not be complete[,] however, until:*

"(A) *A resolution accepting the transfer has been passed by a majority vote of the full membership of the board of education of the city, exempted village, or county school district to which the territory is transferred[.]* " (Emphasis added.)

In *State ex rel. Bell v. Cambridge Bd. of Edn.* (1976), 45 Ohio St.2d 316, 317, 74 O.O.2d 475, 475–476, 345 N.E.2d 57, 57–58, we held that "[i]t is clear that R.C. 3311.24 requires the board of education in which the territory is located to transfer the territory upon approval by the State Board of Education." In so holding, we relied upon the statutory language that the *transferring* board "shall * * * adopt a resolution transferring the territory."

Such mandatory language, however, is conspicuously absent from R.C. 3311.24's reference to the *receiving* board. In fact, the statute provides that the transfer of territory pursuant to R.C. 3311.24 "shall not be complete * * * until" the board of education of the receiving district passes "[a] resolution accepting the transfer * * * by a majority vote of [its] full membership." Thus, R.C.

---

1. Except for a reference to new Subsection (B) and redesignation of paragraphs, current R.C. 3311.24(A) is the same as former R.C. 3311.24. Sub. H.B. No. 1, 138 Ohio Laws, Part I, 1342, 1377–1378.

3311.24 "transfers are subject to * * * acceptance by the board of the transferee school district." 3 Buchter, Scriven & Sheeran, Baldwin's Ohio School Law (1993) 35, Section 4.07(A)(5). Accordingly, "the transfer is ineffective if the board of education of the receiving district does not accept it." 1 Baker & Carey, Baker's Ohio School Law Guide (1994) 23, Section 2.21. See, also, Buchter, Scriven & Sheeran, Ohio School Law 1993–1994 (1993) 92, Section 4.07(C); Drury's Ohio School Guide (3 Ed.1966) 21, Section 2.27.1.

Appellants argue, however, that the only reasonable interpretation of R.C. 3311.24 is to view the proviso of former R.C. 3311.24(A), that transfer is not complete until a resolution accepting the transfer has been passed by a majority vote of the receiving district's board, as merely a statement of one of the steps to be followed to implement the transfer approved by the State Board. Otherwise, appellants argue, a substantial amount of time and judicial resources would be wasted in litigating the State Board's approval order only to have the proposed transfer ultimately rejected by a local board for any or no reason. Appellants also contend that such a procedure ignores the superiority of the State Board by allowing a local board to override its directive.

While appellants' arguments possess some initial appeal, in order to accept appellants' view we would have to construe R.C. 3311.24 to impose a duty upon the receiving district to accept the transfer. Yet by conditioning the completeness of the transfer on the acceptance by a majority vote of the receiving district's board, the General Assembly has set forth a requirement in R.C. 3311.24 which belies such a construction. "[T]he language employed by the Legislature is clear and unambiguous and it is not the province of the court, under the guise of construction, to ignore the plain terms of a statute or to insert a provision not incorporated therein by the Legislature." *State ex rel. Defiance Spark Plug Corp. v. Brown* (1929), 121 Ohio St. 329, 331–332, 168 N.E. 842, 843.

Appellants also argue that the doctrine of *res judicata* and/or the prohibition against the collateral attack of prior judgments should bar Garfield Heights' declaratory judgment action. The State Board argues that the issue of rejection should have been raised in the former proceedings on the merits of the proposed transfer. Cleveland argues that Garfield Heights' reasons for rejecting the proposed transfer could have been or were raised in prior litigation.

Appellants' arguments ignore that the procedure set forth under R.C. 3311.24 provides that the vote of the receiving district's board follows State Board approval, notification thereof and the adoption of a resolution by the transferring district. Hence, there was no occasion to litigate these issues earlier, so Garfield Heights is not precluded from seeking a declaratory judgment now. Moreover, former Ohio Adm.Code 3301–89–01(H), in effect during the administrative proceedings on the merits of the proposed transfer but rescinded during the appeals

process, provided that "[i]n a request for transfer of territory under section 3311.24 of the Revised Code, if the acquiring board of education is opposed to acceptance of the territory in question, such board will not be forced to accept the transfer as provided in division (A) of section 3311.24 of the Revised Code." 1986–1987 Ohio Monthly Record 839–840; Subsection (H) rescinded 1989–1990 Ohio Monthly Record 1274, effective April 27, 1990. In fact, the referee, in recommending approval of the transfer on its merits, prefaced his decision by noting that the State Board "will *not* coerce an acquiring district to accept transfer of territory under R.C. 3311.24. For these reasons, the decision of the state board will not be coercive * * *." (Emphasis *sic.*)

We hold, therefore, that under the clear terms of R.C. 3311.24, the receiving school district may reject the transfer of territory after a proposal to transfer such territory has been approved by the State Board.

We emphasize that in reaching this conclusion we express no opinion as to the propriety of the State Board's decision to approve the transfer, appellee's decision to reject the transfer, or the procedure embraced by R.C. 3311.24. Such considerations are irrelevant in the context of this appeal.

Accordingly, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

WRIGHT, PFEIFER and COOK, JJ., concur.

MOYER, C.J., DOUGLAS and F.E. SWEENEY, JJ., dissent.

COOK, J., concurring. The dissent in this case focuses on the absence of an explicit right to "reject" in R.C. 3311.24. While the word "reject" is not used, the statute allows rejection by permitting a vote on whether to accept.

The statute conditions the completion of the transfer of school territory on the passing of an acceptance resolution by a majority vote of the receiving district's school board members. By requiring such a vote to complete the transfer, the General Assembly no doubt envisioned that a school board member could cast a vote *against* the resolution. To hold otherwise would invoke a concept of statutorily mandating an affirmative vote, a concept that runs contrary to the foremost of our democratic ideals.

With board members invoking their right to vote either "yea" or "nay," the board of education of the receiving district might not have the votes to pass a resolution accepting the transfer. If the resolution is not passed by a majority vote, the transfer cannot be completed.

The parties to this appeal have not argued that there is any distinction between the effects of a transfer being "rejected" versus "not completed." Since a

receiving board of education cannot be obliged to vote *for* a resolution accepting a transfer under R.C. 3311.24, it may, therefore, reject the transfer.

WRIGHT, J., concurs in the foregoing concurring opinion.

DOUGLAS, J., dissenting. The majority holds that the Garfield Heights City School District Board of Education has the right to unilaterally reject a transfer of school district territory. The majority is just plain wrong. R.C. 3311.24 authorizes a local school district board of education to "accept" (not to "reject") a transfer of school district territory. Moreover, stripped of its legal niceties, this case boils down to one thing—regardless of the test of the "present and ultimate good of the pupils concerned" (see Ohio Adm.Code 3301–89–01[F] ), the Garfield Heights board of education just does not want, for some reason, these particular students to be part of the school system of the city in which they reside. Unfortunately, today's majority permits this unfair, unrealistic and discriminatory practice to continue. Accordingly, I dissent.

I

The Facts

The origins of this controversy can be traced to February 1988 when, pursuant to R.C. 3311.24, a sufficient number of qualified voters in the Cranwood area of Garfield Heights filed petitions requesting that their property be transferred from the Cleveland City School District, appellant, to the Garfield Heights City School District, appellee. The Cranwood area is located in the city of Garfield Heights and borders the southeast section of the city of Cleveland. In March 1988, the Cleveland school district board of education filed the petitions with the State Board of Education ("state board"), appellant.

In June 1988, the state board adopted a resolution declaring its intention to consider the proposed transfer. The matter was referred to an impartial referee appointed by the state board. Following an administrative hearing, the referee issued his report and recommendation. The following matters can be gleaned from the referee's report.

The Cranwood area is located in the northeast corner of the city of Garfield Heights and borders the southeast section of the city of Cleveland. The area is predominantly an African–American section of Garfield Heights. The remainder of Garfield Heights is predominantly white. The Cranwood area of Garfield Heights is separated from the central part of the city by a major thoroughfare, railroad tracks, and a cemetery. Apparently, the Cranwood area has been serviced by the Cleveland school district since before World War II. At that time, Garfield Heights was a small village.

At the time of the hearing, 541 of the 542 students residing in the Cranwood area were black. Only one student was white. These students were being bused to thirty-one different schools in the Cleveland school system. Some of the students attended schools thirty-five to forty-five minutes from their homes—each way. By contrast, it takes no longer than ten minutes to travel by vehicle from the Cranwood area to any of the schools located in Garfield Heights. With respect to the relevant distances between schools, the referee stated:

" * * * The following chart indicates the distances from the Cranwood area to the four Garfield Heights schools:

"Elmwood Elementary—2.5 miles

"William Foster Elementary—3 miles

"Garfield Middle School—2.5 miles away.

"Garfield High—3.9 miles

" * * *

"Contrast those differences with the distances the Cranwood area students currently travel one way to their Cleveland schools (excluding distances to the various major work, magnet and vocational schools):

"Kindergarten students and Grades 4–6 attend Cranwood School

"Riverside Elementary (grades 1–3)—15 miles.

"Valley View Elementary (grades 1–3)—16 miles

"Newton D. Baker Junior High (grades 7–8)—15.6 miles

"John F. Kennedy High School (grades 9–12)—2.4 miles

"Seniors who attend John Marshall High School—14.6 miles[.]"

At the hearing, the petitioners asserted that the proposed transfer was a vehicle to end what they perceived to be "racial isolation." Among those testifying was Reverend Joseph A. Kraker, a Catholic priest. Reverend Kraker testified:

" ' * * * I am firmly convinced that Garfield Heights is a divided community. It's just as clear as can be. And I have to believe that when children start going to school together and when parents start going to meetings together that that division, which is so obvious in Garfield Heights, as it is throughout the country, especially so in Garfield Heights * * *. I have to think when we start doing those kinds of family activities together that division is going to break down. Until we start doing these things together, we're going to continue to have a divided community. I don't think that's right.' "

Based upon the evidence at the hearing, the referee concluded that the time had arrived to "transform Garfield Heights into a true community school system."

The referee found that the reasons supporting the transfer, including the issue of race, were compelling. He specifically found that "the transfer greatly would benefit the schoolchildren in [the] transfer area by allowing them for the first time in the history of their community to attend neighborhood schools * * *," and that the "present and ultimate good of the pupils" test clearly mandated that these students be permitted to attend schools within their own city. Accordingly, the referee recommended that the state board approve the transfer. In April 1989, the state board passed a resolution accepting the referee's recommendation and approving the territory for transfer.

Thereafter, the Garfield Heights school district filed, in the Court of Common Pleas of Franklin County, an R.C. 119.12 appeal from the state board's order approving the transfer. On June 6, 1989, the common pleas court affirmed the state board's decision, finding that the state board's order was supported by reliable, probative and substantial evidence. On June 8, 1989, the Cleveland City School District Board of Education passed a resolution transferring the territory in question to the Garfield Heights school district. The decision of the common pleas court affirming the state board's order was subsequently affirmed by the Court of Appeals for Franklin County. See *Garfield Hts. City School Dist. v. State Bd. of Edn.* (1990), 62 Ohio App.3d 308, 575 N.E.2d 503. On May 22, 1991, this court denied review of the matter. 60 Ohio St.3d 708, 573 N.E.2d 671.

Nevertheless, on July 9, 1991, the Garfield Heights board of education passed a resolution *rejecting* the transfer of territory. In response, the Cleveland school district filed, in the Court of Common Pleas of Franklin County, a motion for civil contempt under the case number of the terminated administrative appeal. It is undisputed that on July 19, 1991, the state board filed a similar motion in Franklin County. Apparently, both motions asserted that the Garfield Heights school district was in contempt of the trial court's order affirming the state board's decision.

Additionally, on July 10, 1991, the Garfield Heights school district filed a declaratory judgment action in the Court of Common Pleas of Cuyahoga County. In the complaint, the Garfield Heights school district sought a determination that it was not required to accept the proposed transfer.

With respect to the contempt proceedings in Franklin County, the Franklin County Court of Common Pleas determined that the June 6, 1989 order affirming the state board's decision did not order the Garfield Heights school district to do or to refrain from doing anything. Rather, the order, it seems, merely affirmed the evidentiary basis for the state board's decision. However, the court *sua sponte* "reopened" the case and issued a "supplementary order" requiring the Garfield Heights school district to "complete transfer of the transfer territory by the start of its 1991–92 school year." The Garfield Heights school district

appealed from the supplementary order. On appeal, the Court of Appeals for Franklin County reversed, finding that the trial court had no jurisdiction to reopen the terminated administrative appeal. Further, the court of appeals determined that the question whether the Garfield Heights board of education had the right to reject the transfer was a matter to be decided in the declaratory judgment action in Cuyahoga County. The court of appeals also determined (in *dicta*) that the Garfield Heights board of education had discretion under R.C. 3311.24 to reject the transfer of territory. See *Garfield Hts. City School Dist. v. State Bd. of Edn.* (1992), 85 Ohio App.3d 117, 619 N.E.2d 429. In a divided vote (Moyer, C.J., and Douglas, J., dissenting), we denied review of this matter. 65 Ohio St.3d 1458, 602 N.E.2d 254.

Meanwhile, with respect to the declaratory judgment action in Cuyahoga County, the Cuyahoga County Court of Common Pleas determined that the Garfield Heights board of education had the right to reject the transfer of territory under the clear and unambiguous terms of R.C. 3311.24. On appeal, the Court of Appeals for Cuyahoga County affirmed. The court of appeals held that " * * * R.C. 3311.24 unambiguously sets forth a procedure for the transfer of a territory which plainly permits the receiving district to *reject* the State Board's decision." (Emphasis added.) From this decision, the state board and the Cleveland school district now appeal.

## II

### The Law

This is an appeal from the judgment of the Court of Appeals for *Cuyahoga* County holding that the Garfield Heights board of education had the right to reject the transfer of territory. The issue presented for our consideration is whether R.C. 3311.24(A) grants a local school district board of education the right to reject a transfer of school district territory when (1) the transfer has previously been approved by the State Board of Education following an adjudication hearing, and (2) the state board's decision has been affirmed at every level of appellate review. For the reasons that follow, I would reverse the judgment of the court of appeals.

R.C. 3311.24(A) establishes an orderly procedure to transfer territory between adjoining school districts. The steps to completing a transfer may be stated as follows. First, petitions requesting the transfer must be signed by seventy-five percent of the electors residing in the territory to be transferred. Second, the board of education in the district in which the proposal originates must file the proposal with the State Board of Education. Third, the state board must approve the proposed transfer of territory. Fourth, the board of education in the district from which the transfer is to be made must pass a resolution transferring

the territory in question. Additionally, even if these four steps have been satisfied, R.C. 3311.24(A) further provides:

" * * * Such transfer shall not be complete however, *until:*

"(1) *A resolution accepting the transfer has been passed by a majority vote of the full membership of the board of education of the city, exempted village, or county school district to which the territory is transferred;*

"(2) An equitable division of the funds and indebtedness between the districts involved has been made by the board of education making the transfer;

"(3) A map showing the boundaries of the territory transferred has been filed, by the board of education accepting the transfer, with the county auditor of each county affected by the transfer.

"When such transfer is complete the legal title of the school property in the territory transferred shall be vested in the board of education of the school district to which the territory is transferred." (Emphasis added.)

Here, the residents of the Cranwood area of Garfield Heights filed petitions for the transfer of their property from the Cleveland school district to the Garfield Heights school district. The Cleveland school board filed the petitions with the state board. The state board approved the transfer. The Cleveland school board passed a resolution transferring the territory to the Garfield Heights school district. At that point, the four necessary steps toward completion of the transfer had occurred. However, the Garfield Heights board of education then passed a resolution rejecting the transfer. This rejection formed the basis for the declaratory judgment action in Cuyahoga County, wherein it was claimed that the Garfield Heights school board had the absolute right under R.C. 3311.24(A) to reject the transfer of territory.

The trial court held and the court of appeals affirmed that the language of R.C. 3311.24(A), "[s]uch transfer shall not be complete however, until," which precedes the matters listed in R.C. 3311.24(A)(1), (2) and (3), clearly and unambiguously granted the Garfield Heights board of education the discretion to reject the state board's order approving the territory for transfer. I disagree.

Clearly, R.C. 3311.24(A) conditions completion of a transfer of territory upon a vote of the board of education of the receiving district. However, R.C. 3311.24(A) does not specifically authorize the receiving district to *reject* a transfer of territory. Rather, the statute makes the *acceptance* of the transfer by the receiving local school district a condition precedent to the completion of the transfer. Therefore, the question whether the receiving school district has the discretion to reject the transfer is not specifically answered by the terms of the statute. Indeed, an argument could be made that the very terms of the statute contemplate that the receiving local school district must accept a transfer that

has been approved by the state board. This is demonstrated by the final paragraph of R.C. 3311.24(A), which begins with the words, "[w]hen such transfer is *complete.*" (Emphasis added.)

Therefore, I strongly disagree with the proposition that R.C. 3311.24 clearly and unambiguously permitted the Garfield Heights board of education to reject the transfer. Thus, it becomes necessary to determine the intent of the General Assembly through the process of statutory construction.

It is a cardinal rule of statutory construction that a statute is to be interpreted to give meaning to the entire enactment. See R.C. 1.47(B). Additionally, statutes are to be construed to avoid unreasonable or absurd consequences. *State ex rel. Dispatch Printing Co. v. Wells* (1985), 18 Ohio St.3d 382, 384, 18 OBR 437, 439, 481 N.E.2d 632, 634. See, also, R.C. 1.47(C). The majority's interpretation of R.C. 3311.24(A) violates these fundamental principles of law.

The majority concludes that R.C. 3311.24(A) grants a receiving local school district board of education the right to unilaterally reject a transfer of territory after the transfer has been approved by the state board, and after the decision of the state board has been affirmed at every level of appellate review. However, the majority's construction of R.C. 3311.24 in effect abrogates the first four steps in the transfer process, and renders meaningless this court's decision in *Rossford Exempted Village School Dist. v. State Bd. of Edn.* (1989), 45 Ohio St.3d 356, 544 N.E.2d 651, which recognizes a right to judicial review of a state board's R.C. 3311.24 adjudication order approving a transfer of territory.

In *Rossford,* syllabus, this court held that: "An appeal may be taken to the court of common pleas pursuant to R.C. 119.12 from an order of the State Board of Education resulting from a hearing or adjudication pursuant to a request for transfer of territory pursuant to R.C. 3311.24." The rationale for this holding is that the decision of the state board under R.C. 3311.24 approving a transfer of territory is a quasi-judicial determination that finally determines the rights and duties of the property owners and both local school districts. *Id.* at 362, 544 N.E.2d at 657. Thus, according to the *Rossford* majority, an adjudication order issued by the state board approving a transfer under R.C. 3311.24 is a final appealable order because it determines the rights of, *inter alia,* the local school districts involved. How then can a receiving local school district board of education reject a transfer of territory after the state board issues an order approving the transfer if, as *Rossford* holds, the state board's decision is final, appealable, and fixes the rights of all parties involved? The answer, of course, is that it cannot!

The first four steps of the R.C. 3311.24 transfer process must mean something. However, the majority's interpretation of R.C. 3311.24 renders the process meaningless. In essence, the majority's construction of R.C. 3311.24 makes the

receiving local school district board of education the ultimate decision maker in the territorial transfer process. In this regard, the majority's analysis renders the state board's hearing and approval process absolutely meaningless, and permits unnecessary judicial review of the state board's unenforceable orders. In my judgment, granting a local school district board of education the discretion to override the state board's adjudicative decision is tantamount to the tail wagging the dog.

Further, to interpret R.C. 3311.24 as granting a receiving local school district board of education the right to unilaterally reject a transfer of territory that has been approved by the state board would, indeed, bring about additional unreasonable consequences. The facts of this case make the point. The Garfield Heights school district participated in the administrative hearings concerning the merits of the transfer. Following the hearings, an impartial referee appointed by the state board recommended that the transfer be approved. The Garfield Heights school district objected to the referee's report and recommendation. The state board overruled the objections and approved the territory for transfer. The Garfield Heights school district then initiated an R.C. 119.12 appeal challenging the state board's decision approving the transfer of territory. The Garfield Heights school district lost at each level of appellate review of the state board's decision. Next, the Garfield Heights school district initiated the present litigation by filing a declaratory judgment action alleging that the board of education had absolutely no responsibility whatsoever to accept the transfer regardless of what had happened at the hearings before the state board, and regardless of the fact that the state board's decision had been affirmed at every level of appellate review.

Assuming, *arguendo*, that the Garfield Heights board of education had the right to reject the transfer of territory, that right should have been exercised at some point before the completion of all relevant proceedings concerning the merits of the transfer. The merits of the transfer were litigated over the course of several years. When the Garfield Heights school district found that it could not succeed on the merits of the transfer, it essentially claimed that the school board had the discretion to reject the transfer regardless of the merits. Certainly, the General Assembly, in enacting R.C. 3311.24, could not have intended such a result.

The tactics employed by the Garfield Heights school district to avoid the transfer of territory may best be illustrated by the following example.

Suppose the Cleveland Browns are scheduled to play the Cincinnati Bengals on three separate occasions during the regular season. Assume that Cleveland wins the first two games. The third game is played without any mention of league rules that prohibit American Football Conference ("AFC") Central Division

opponents from playing one another more than two times during the regular season.

In the fourth quarter of the third game, with time on the clock expiring, Cleveland scores the winning touchdown on a controversial call by a game official. Cincinnati appeals the call to the head official, without success. Cincinnati then initiates a protest before the AFC, claiming that the call on the field should be overturned. The AFC carefully reviews the play and upholds the decision of the game official. Next, Cincinnati seeks review of the AFC ruling by the Commissioner of Football. The Commissioner denies any further review of the matter. Having lost on the merits of its claims, Cincinnati then decides to challenge the appropriateness of the game under the AFC rules that could have been invoked to avoid the game completely. Should Cincinnati be heard to complain concerning a matter that could have been raised on a much earlier occasion? At some point, Cincinnati's objection to the scheduling of the third game must have been waived.

An analogous situation exists here. The Garfield Heights school district participated in the hearing process before the state board. The merits clearly dictated that the transfer of territory was in the best interests of all students involved. Thus, the state board approved the transfer, and that decision was affirmed at every level of appellate review. Now, at this late juncture, the Garfield Heights school district seeks to avoid the transfer regardless of the merits by claiming that the Garfield Heights board of education has the final say on the matter. The majority rewards the Garfield Heights school district's twelfth-hour appeal. However, in my judgment, the Garfield Heights school district has waived its ability to assert any claimed right to reject the transfer of territory, since it did not raise this issue during the R.C. 119.12 appeal. In other words, this game was over long before the Garfield Heights school district initiated the present litigation.

Finally, a number of other enactments support the conclusion that a receiving local school district board of education does not have the right to reject a transfer of territory under R.C. 3311.24(A). For instance, other statutes providing for territorial transfers specifically grant the receiving school district board of education the right to accept *or reject* the transfer (see R.C. 3311.22 and 3311.231), or otherwise make the issuance of a transfer order subject to the prior approval of the receiving school district board of education (see R.C. 3311.38). Thus, had the General Assembly intended to grant a receiving local school district board of education the right to reject a transfer of territory under R.C. 3311.24(A), it certainly knew how to do so. The fact that the General Assembly did not specifically grant a receiving school district board of education the right

to reject a transfer of territory under R.C. 3311.24(A) strongly indicates that such a right does not exist.

For the foregoing reasons, I would hold that R.C. 3311.24(A) does not vest discretionary authority in a local school district board of education to reject a transfer of school district territory after the transfer has been approved by the state board and after the state board's decision has been affirmed at every level of appellate review. I would reverse the judgment of the court of appeals, enter final judgment in favor of appellants, and order the Garfield Heights board of education to (1) pass a resolution accepting the transfer, (2) prepare to accept the Cranwood area students into the Garfield Heights school district, and (3) make arrangements to accommodate the Cranwood area students for the 1995/1996 school year. Because the majority does not do so, I respectfully dissent.

MOYER, C.J., and F.E. SWEENEY, J., concur in the foregoing dissenting opinion.