OPINION
Amy Crowe, appellant, appeals a judgment of the Franklin County Court of Common Pleas, Civil Division. The court affirmed a decision by the State Board of Education, appellee, denying appellant's request to transfer territory from the Columbiana Exempted Village School District ("Columbiana") to the Springfield Local School District ("Springfield") pursuant to R.C. 3311.24. We reverse and remand.
Appellant resides in Springfield Township, Mahoning County, Ohio. On March 29, 1996, appellant and four of her neighbors filed a petition with Columbiana requesting a transfer of 144.49 acres from Columbiana to Springfield. The petition was signed by appellant and her four neighbors pursuant to the requirements of R.C. 3311.24. In a hearing before a referee for the board, appellant stated that she requested the transfer in part because of her community and family ties to the Springfield Township and the New Springfield area. At the time of the request, only one student would have been affected by the transfer: appellant's daughter Brittany Crowe.
The proposed property to be transferred is the only area of Springfield Township that is located within Columbiana's boundaries. Appellant presented an affidavit from Darrel Bacon, who stated that the property had previously been a part of Springfield. Bacon stated that in 1940, the property was transferred to Columbiana after a prior resident of the property (who was also a bus driver for Columbiana) requested that his children be allowed to attend Columbiana.
Pursuant to R.C. 3311.24, appellant's petition was forwarded to the State Board of Education ("board") by Columbiana and Springfield. Springfield supported appellant's transfer request and Columbiana opposed it. Pursuant to Ohio Adm. Code3301-89-02(B), Columbiana and Springfield were required to answer seventeen questions concerning the transfer. The only question Columbiana and Springfield differed on their answers was a question which states: "Will the loss of either pupils or valuation be detrimental to the fiscal or educational operation of the relinquishing school district?" Ohio Adm. Code3301-89-02(B)(9). Without providing reasons for their answers, Columbiana answered the question "yes" and Springfield answered the question "no."
On May 21, 1997, a hearing was held before a referee for the board. Two witnesses, appellant and Joe Rottenborn, Superintendent of Columbiana, testified at the hearing. In his "Summary of Report and Recommendation of Referee," the referee recommended:
 * * * that the proposed territory transfer be approved on the grounds that the petitioners have carried their burden of proof in establishing the transfer is in the present and ultimate best interest of the students living within the territory proposed for transfer.
At a meeting held on November 10, 1997, the board rejected the referee's recommendation and disapproved the proposed transfer.
Appellant appealed the board's decision to the trial court. Appellant argued that the board failed to properly apply the standards established for transferring territory to a school district. Appellant contended:
 The record, however, is devoid of any evidence on how this transfer of territory would be detrimental to the educational operation of the Columbiana School District except for testimony that the district "values every dollar it receives". There is an absence of testimony regarding the specific effects of the loss of territory on Columbiana School District. For example, there is no testimony that school buildings will be closed, teachers laid-off, or programs curtailed as a consequence of the transfer. If the loss of any funds were to be the sole criteria for transfer applications there could never be a transfer of territory because the district losing territory can always claim a loss of funds when it either loses a pupil from its average daily membership or real estate taxes from its territory. [Emphasis sic.]
On August 25, 1998, the trial court rendered a decision affirming the board's decision. The court stated that "the decision comes down to whether the negative fiscal impact the transfer would have on Columbiana is outweighed by the present and ultimate benefit to Brittany Crowe and her siblings." The court found that:
 * * * Columbiana will lose its portion of the property tax dollars which it gets from the tax collected against this parcel. There was no evidence presented as to what that number was, but the assessed value of the transfer area is between $61,840 and $93,530. [The Discrepancy is between Columbiana's and Springfield's respective answers on their questionnaires. No one with personal knowledge testified.] Columbiana is facing a $90,000 budget cut for the next biennium and needs every tax dollar it can get. Their annual budget is about $7,000,000.
The court further stated:
 * * * As an aside, the Court would note that only a small fraction of the proposed transfer area is improved. Of the 144.49 acres at issue, the Crowes own only about 3.69 acres with a house and the Rices own 8 acres with a house. The rest is unimproved farm land.] Had petitioners simply attempted to transfer the improved area, rather than the 100 plus acres of farmland, this case may well have turned out differently. This is not so much because of the potential for development of that unimproved area as because it is the largest area for tax revenue and there is no reason to transfer it since there are no children living on it.
Appellant appeals this decision and presents the following five assignments of error:
 I. THE TRIAL COURT ABUSED ITS DISCRETION IN AFFIRMING THE DECISION OF THE STATE BOARD SINCE BOTH THE TRIAL COURT AND THE STATE BOARD FAILED TO PROPERLY APPLY THE STANDARDS ESTABLISHED FOR TRANSFERS OF SCHOOL DISTRICT TERRITORY AS SET OUT BY THE OHIO SUPREME COURT AND OHIO ADMINISTRATIVE CODE.
 II. THE TRIAL COURT ABUSED ITS DISCRETION IN AFFIRMING THE DECISION OF THE STATE BOARD SINCE THERE IS NO EVIDENCE IN THE RECORD TO SUBSTANTIATE AN "ACTUAL DETRIMENTAL FINANCIAL IMPACT" OF THE PROPOSED TRANSFER ON COLUMBIANA SCHOOL DISTRICT.
 III. THE TRIAL COURT ABUSED ITS DISCRETION IN AFFIRMING THE DECISION OF THE STATE BOARD SINCE THE STATE BOARD IMPROPERLY CONSIDERED EVIDENCE NOT IN THE RECORD IN REJECTING THE REFEREE'S RECOMMENDATION ON THE MERITS OF THE PETITION.
 IV. THE TRIAL COURT ABUSED ITS DISCRETION IN AFFIRMING THE DECISION OF THE STATE BOARD SINCE THE BOARD CONSIDERED THE LOSS OF TAX VALUATION, EVEN THOUGH PROPERTY TAXES CAN NO LONGER BE THE PRIMARY SOURCE OF SCHOOL FUNDING IN THE STATE OF OHIO.
 V. OHIO ADM. CODE 3301-89-02 IS UNCONSTITUTIONAL AND DENIES DUE PROCESS OF LAW UNDER THE OHIO AND UNITED STATES CONSTITUTIONS IN THAT IT UNDULY FOCUSES ON PROPERTY TAXES WHEN THERE IS NO LONGER A RATIONAL BASIS FOR RELYING ON PROPERTY TAXES IN MAKING TRANSFER
 DECISIONS PURSUANT TO OHIO REVISED CODE § 3311.24.
Appellant argues in her second assignment of error that the board's decision was not supported by evidence showing that the "loss of either pupils or valuation [would] be detrimental to the fiscal or educational operation" of Columbiana. Appellant contends that the trial court should have reversed the board's decision because it was not supported by reliable, probative, and substantial evidence.
R.C. 3311.24 provides the mechanism by which territory may be transferred from a city or exempted village school district to an adjoining city, exempted village or county school district. Garfield Hts. City School Dist. v. State Bd. of Edn. (1995),71 Ohio St.3d 590, 592. R.C. 3311.24(A) states in part:
 Except as provided in division (B) of this section, * * * if a petition, signed by seventy-five per cent of the qualified electors residing within that portion of a[n] * * * exempted village school district proposed to be transferred voting at the last general election, requests such a transfer, the board of education of the district in which such proposal originates shall file such proposal, together with a map showing the boundaries of the territory proposed to be transferred, with the state board of education prior to the first day of April in any even-numbered year. * * *
* * *
 * * * [T]he state board of education shall either approve or disapprove a proposed transfer of territory filed with it as provided by this section and shall notify, in writing, the boards of education of the districts affected by such proposed transfer of territory of its decision.
Since the act of the State Board of Education disapproving a request for transfer of territory pursuant to R.C. 3311.06 is a "quasi-judicial act," the board's decision "is appealable under R.C. 119.12, where the affected parties are provided with notice, a hearing, and the opportunity to present evidence pursuant to Ohio Adm. Code Chapter 3301-89." Union Title Co. v. State Bd. of Edn. (1990), 51 Ohio St.3d 189, syllabus.
The standard of review for the court of common pleas is given in R.C. 119.12, which states in part:
 The court may affirm the order of the agency complained of in the appeal if it finds, upon consideration of the entire record and such additional evidence as the court has admitted, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law. In the absence of such a finding, it may reverse, vacate, or modify the order or make such other ruling as is supported by reliable, probative, and substantial evidence and is in accordance with law. * * *
The standard of review for appellate courts is whether the common pleas court abused its discretion in finding that the administrative order was or was not supported by reliable, probative, and substantial evidence. Samson v. Ohio Bd. of Edn. (Aug. 13, 1998), Franklin App. No. 97APE12-1702, unreported (1998 Opinions 2849, 2853-2854).
 "In reviewing an order of an administrative agency, an appellate court's role is more limited than that of a trial court reviewing the same order. It is incumbent on the trial court to examine the evidence. Such is not the charge of the appellate court. The appellate court is to determine only if the trial court has abused its discretion. An abuse of discretion "'* * * implies not merely error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency.'" * * * Absent an abuse of discretion on the part of the trial court, a court of appeals must affirm the trial court's judgment.
 "The fact that the court of appeals * * * might have arrived at a different conclusion than did the administrative agency is immaterial. Appellate courts must not substitute their judgment for those of an administrative agency or a trial court absent the approved criteria for doing so."
Rossford Exempted Village School Dist. Bd. of Edn. v. State Bd. of Edn. (1992), 63 Ohio St.3d 705, 707, quoting Lorain City Bd. of Edn. v. State Emp. Relations Bd. (1988), 40 Ohio St.3d 257,260-261 (citations omitted).
When a transfer of territory between school districts is requested, "a balancing must take place between many competing factors in order to achieve the desired result of achieving what is in the best interests of the students concerned." Garfield Hts. City School Dist. v. State Bd. of Edn. (1990), 62 Ohio App.3d 308,323. Ohio Adm. Code 3301-89-02 sets forth the procedures which must be employed to carry out a transfer of territory pursuant to R.C. 3311.24, and also provides a list of seventeen questions that the affected school districts must answer. Union Title Co., at 192. Ohio Adm. Code 3301-89-02(B)(9) states: "Will the loss of either pupils or valuation be detrimental to the fiscal or educational operation of the relinquishing school district?" This question may be answered by evidence showing the projected loss of revenue to a school district and a finding concerning how the loss of revenue is a "`factor significant enough to stand in the way of the proposed transfer.'" Levey v. State Bd. of Edn. (Feb. 28, 1995), Franklin App. No. 94APE08-1125, unreported (1995 Opinions 749, 756).
In the present case, the trial court found that the loss of property tax dollars from the proposed parcel would be "detrimental to the fiscal or educational operation" of Columbiana. The court made this determination even though it also stated that "[t]here was no evidence presented as to what that number was."
A review of the record supports the trial court's finding that no evidence was presented concerning how much money Columbiana would lose if the transfer occurred. The record does show that in 1995-1996, the valuation of the proposed transfer property was between $61,840 and $93,530, and that the total property valuation of Columbiana was $79,350,136. Therefore, the valuation of the proposed property to be transferred as a percentage of the total property valuation of Columbiana is between 0.078% and 0.118%.
A review of the record also shows that several individuals expressed opinions on how the transfer would be "detrimental to the fiscal or educational operation" of Columbiana. Superintendent Rottenborn stated that he opposed the transfer because "the residents that you have in your school district represent, among other things, the financial life blood of your district. And so, therefore, you guard them zealously." He also testified that Columbiana received about $1,200 in basic aid from the state for each student. When asked whether he knew of any plans for the proposed transfer property to be divided, Rottenborn answered "I have no knowledge." Rottenborn then stated:
 Well, obviously if the land were cut in parcels and the average price of a home in our school district these days being somewhere I would estimate, would be $125 and $150,000 for a new home, that would be a significant source/loss of revenue depending whether that continues to be part of the Columbiana Exempted School District or be transferred to Springfield Local.
Rottenborn further stated that house construction and development "is not my area of expertise to be sure" and whether "people live in the area now or not, five years from now * * * [is] only speculation."
The referee stated in his report and recommendation:
 The loss of valuation and pupils suffered by the Columbiana Exempted Village School District from the proposed transfer would, without question, leave the Columbiana Exempted Village School District able to continue to operate with sufficient financial and human resources. It is not correct, however, to say that no impact would result. While few students live on the 144 acres proposed for transfer, and while this territory, at present, remains undeveloped except for two homes on roughly 12 acres of the 144 acres which make up this territory, the referee finds that the transfer of this territory as proposed would result in a detrimental effect to the Columbiana Exempted Village School District's fiscal and educational operation. The referee does not view the impact of this proposed transfer as de minimus and finds that this factor opposes the proposed transfer.
While a review of the record shows that a transfer of the property would have some financial impact on Columbiana district, there is no evidence of how the financial impact would be "detrimental to the fiscal or educational operation" of Columbiana district beyond mere speculation. We do not believe that the purpose of Ohio Adm. Code 3301-89-02(B)(9) is to simply determine whether a relinquishing school district will lose funds. Since Ohio school districts receive their funding primarily from state revenue paid on a per pupil basis, and local revenue "which consists primarily of locally voted school district property tax levies" (see DeRolph v. State (1997), 78 Ohio St.3d 193, 199), almost every transfer of property from a school district will negatively impact their funding. The key to Ohio Adm. Code3301-89-02(B)(9) is whether the loss of funds would be "detrimental to the fiscal or educational operation of the relinquishing school district." This requires a finding of how the loss of income would affect the relinquishing school district. Simply presenting evidence that the relinquishing school district will lose funds is insufficient to show that the loss of funds would be detrimental to the fiscal or educational operation of the school district.
For example, in Levey, in order to determine whether the loss of either pupils or valuation would be detrimental to the fiscal or educational operation of the relinquishing school system, evidence was presented showing that the projected lost revenue to the Toledo City School system would be $52,765.47 annually from the transfer of ten acres from the Toledo City School system. The referee found that "`the loss of revenue which would be suffered by the Toledo City School District in the event this transfer were to be approved does not appear to be a factor significant enough to stand in the way of the proposed transfer.'" Id. at 756.
In the present case, no evidence was presented showing how much total revenue Columbiana would lose because of the transfer. Additionally, there is no evidence beyond mere speculation on whether the proposed transfer property would be developed in the future, potentially providing Columbiana with increased revenues based upon higher property values. As Rottenborn correctly surmised, whether "people live in the area now or not, five years from now * * * [is] only speculation."
Therefore, we find that the trial court abused its discretion in affirming the board's decision because reliable, probative, and substantial evidence does not support the finding that the proposed transfer of the property would be "detrimental to the fiscal or educational operation" of Columbiana. Since this factor was the only factor not favoring the transfer, and a review of the evidence shows more than sufficient evidence favoring the transfer, we sustain appellant's second assignment of error and reverse the trial court's affirmance of the board's decision. Because of our disposition of appellant's second assignment of error, we do not need to address appellant's remaining assignments of error. App.R. 12(A)(1)(c).
R.C. 119.12 states in part that the trial court has authority to "reverse, vacate, or modify the [agency's] order or make such other ruling as is supported by reliable, probative, and substantial evidence and is in accordance with law." R.C. 119.12
also states that the trial court's judgment "shall be final and conclusive unless reversed, vacated, or modified on appeal." Therefore, since the board's decision denying appellant's request to transfer the proposed property to Springfield is not supported by "reliable, probative, and substantial evidence," and a review of the evidence shows sufficient evidence supporting the transfer, the trial court is directed to enter a judgment entry that: (1) directs the board to approve appellant's request to transfer the proposed property to Springfield, and (2) is consistent with the reasoning of this opinion.
Judgment reversed;
cause remanded.
BRYANT and TYACK, JJ., concur.