THE STATE, EX REL. KILBURN, APPELLEE, *v.* GUARD ET AL., APPELLANTS.

[Cite as State, ex rel. Kilburn, *v.* Guard (1983), 5 Ohio St. 3d 21.]

(No. 82-904—Decided May 18, 1983.)

*Turrell & Phillips Co., L.P.A., Mr. Roger B. Turrell* and *Mr. Stanley S. Phillips,* for appellee.

*Bauer, Morelli & Heyd Co., L.P.A., Mr. Arnold Morelli* and *Mr. J. William Duning,* for appellants.

*Per Curiam.* This appeal is brought from the grant of summary judgment by the trial court. Summary judgment is appropriate only when it appears from the record before the court that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Civ. R. 56(C). Here, plaintiff seeks a name clearing hearing to refute charges arising from the termination of his employment as chief of police. Such a name clearing hearing is mandated in certain circumstances by the Fourteenth Amendment to the United States Constitution. A civil action for damages is available pursuant to the Civil Rights Act of 1871, as amended, Section 1983, Title 42, U.S. Code. These protections exist for the benefit of public employees whose discharge would otherwise stigmatize their reputation without due process of law. See, *e.g., Board of Regents* v. *Roth* (1972), 408 U.S. 564; *Codd* v. *Velger* (1977), 429 U.S. 624.

Procedural due process requires notice and an opportunity to be heard "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him * * *." *Wisconsin* v. *Constantineau* (1971), 400 U.S. 433, 437. "The purpose of such notice and hearing is to provide the person an opportunity to clear his name. Once a person has cleared his name at a hearing, his employer, of course, may remain free to deny his future employment for other reasons." *Board of Regents, supra,* at 573, fn. 12.

This protection is founded on either the "property" or "liberty" compo-

nent in the Fourteenth Amendment's guarantee of liberty and property rights. " 'Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State * * * subjects, or causes to be subjected, any citizen of the United States * * * to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws,' is liable for damages under Section 1983, Title 42, U.S. Code. It is established that these words were intended to encompass municipal corporations as well as natural 'persons.' " *Monell* v. *New York City Dept. of Social Services* (1978), 436 U.S. 658.

Accordingly, a claim to a name clearing hearing and for damages is made upon a showing of a deprivation of liberty and/or property. Absent a finding of a property right in continued employment, a name clearing hearing is required only if the employer creates and disseminates a false and defamatory impression about the employee in connection with his termination so as to infringe on his right to liberty. *Codd, supra,* at 628.

This court, in *State, ex rel. Trimble,* v. *State Board of Cosmetology* (1977), 50 Ohio St. 2d 283 [4 O.O.3d 447], rejected a public employee's asserted right to a name clearing hearing on her termination of employment, holding that "[a]n unclassified civil servant is not entitled to the Fourteenth Amendment due process protection of a hearing before discharge when her asserted property interest in continued employment consists of one favorable job evaluation and permanent employee status and when her alleged liberty interest in reputation and future job opportunities is threatened by a discharge for 'behavior and performance in the past' and by a reprimand for behavior on one occasion."

As observed by Justice William B. Brown, to have a liberty interest needing the protection of a hearing, a discharged employee must suffer "allegations * * * sufficiently damaging to hurt * * * [her] reputation in the community or to foreclose her future employment opportunities." *Trimble, supra,* at 287. Leona Trimble, an employee in the unclassified service of the State Board of Cosmetology, received both a letter of reprimand one month prior to her termination and a letter which attributed the job action to her "behavior and performance in the past * * *." Considering the impact of both letters on her reputation, we concluded that Trimble's liberty interest was not violated.

In this case, defendants made no allegations at the time of Kilburn's termination, choosing to remain silent as to the reasons for the decision to fire him. In his appeal, Kilburn raises only the infringement of his liberty interest, *i.e.,* that his employer created and disseminated a false and defamatory impression in connection with his termination, entitling him to a name clearing hearing and possible civil damages.

At the time the trial court granted defendants' motion for summary judgment on January 2, 1980, based upon "pleadings, affidavit, stipulations, exhibits, argument and memoranda of counsel in this action," it had before it

certain relevant documents. Most significant was Kilburn's affidavit which read:

"LESTER KILBURN, first duly cautioned and sworn deposes and says that he has personal knowledge of these facts and states as follows:

"1.  That his reputation has been damaged by his being fired, without reason given, by defendant Charles Guard in that he has received a great deal of unwanted and unneeded publicity which speculates in a manner which is damaging to his integrity and honesty.

"2.  That his employment opportunities have been greatly foreclosed by defendant Guard's action in that after 22 years as a police officer and chief of police with a spotless record, he has applied for a position either as chief of police, police officer, security officer, or insurance claims examiner in at least 12 instances unsuccessfully; that some of these prospective employers were Economy Fire and Casualty Insurance Company, Dayton Tire and Rubber Company, Doylestown, Ohio, Sabrino, Ohio and Wayne Township, Montgomery County, Ohio.

"3.  That affiant believes that the manner and circumstances of his discharge by defendant Guard were the reason for his loss of reputation and foreclosed employment opportunities.

"Further affiant sayeth not."

Also significant was the following allegation made in Kilburn's "reply memorandum contra defendants' motion for summary judgment":

"Hanging over Lester Kilburn is the spector [sic] of the well publicized 'investigation' which has now [December 1979] been taking place almost a year. The city attorney has promised, repeatedly, that the investigation report would be made and that copies of it would be given those directly affected. We have seen nothing except newspaper publicity. At present, Lester Kilburn is in a position where he has been fired under circumstances where defendants have placed a cloud over him. The defendants without ever stating one way or the other, know that his attempts to get employment, his attempts to practice his trade or profession are seriously jeopardized. Where does this leave Lester Kilburn?"

Taken together, and in light of the peculiar quality of public trust vested in a chief of police, these averments raise the issue of whether the deliberate silence of the city and its officials concerning the reasons for Kilburn's dismissal may constitute an employer-created and disseminated false and defamatory impression about Kilburn in connection with his termination, so as to infringe on his right to liberty. Given this genuine issue of material fact, summary judgment was inappropriate.

Although Kilburn has not yet demonstrated his right to a full due process name clearing hearing, given allegations that the city damaged his reputation, he is entitled to an evidentiary hearing in the trial court to determine whether he has a right to such a full name clearing hearing. While Kilburn did not demonstrate that any allegations of malfeasance of misfeasance were promulgated by city officials, we find that by granting defendants' motion

for summary judgment, the trial court prematurely foreclosed proof on those issues. Given the official silence and widespread speculation in the press, we cannot say on the basis of the record before us that Kilburn's liberty interest was not violated by the city and its officials. Upon further development of the facts surrounding his discharge, it may be demonstrated that defendants' actions sufficiently damaged Kilburn's reputation in the community or foreclosed his future employment opportunities to warrant a full name clearing hearing.

Accordingly, in order to afford plaintiff an opportunity to demonstrate his entitlement to a Fourteenth Amendment due process hearing and to maintain a civil action under Section 1983 for damages, the judgment of the court of appeals which reversed the trial court's summary judgment for defendants is affirmed, and the cause is remanded to the trial court for further proceedings in accordance with law.

*Judgment affirmed.*

HOLMES, C. BROWN and J. P. CELEBREZZE, JJ., concur.

LOCHER, J., concurs in judgment only.

CELEBREZZE, C.J., W. BROWN and SWEENEY, JJ., dissent.

WILLIAM B. BROWN, J., dissenting. Because I believe the majority has unnecessarily subjected public employers to potential liability for routine administration of personnel matters, I respectfully dissent.

The effect of the majority's decision is to afford a discharged, non-classified public employee a hearing whenever that employee alleges that the public employer remained silent as to the reasons for the discharge in the presence of unfavorable publicity. Such a result is neither mandated by case law precedent nor warranted by public policy considerations.

The United States Supreme Court held in *Codd* v. *Velger* (1977), 429 U.S. 624, 627-628, that a non-tenured employee who has been stigmatized by his discharge from employment is entitled to a hearing " '* * * to provide the person an opportunity to clear his name' * * * [o]nly if the employer creates and disseminates a false and defamatory impression about the employee in connection with his termination * * *."

This test was applied as follows by that court in *Owen* v. *Independence* (1980), 445 U.S. 622, 633-634, at fn. 13:

" '* * * [T]he city — through the unanimous resolution of the City Council — released to the public an allegedly false statement impugning petitioner's honesty and integrity. Petitioner was discharged the next day. The Council's accusations received extensive coverage in the press, and even if they did not in point of fact 'cause' petitioner's discharge, the defamatory and stigmatizing charges certainly 'occur[red] in the course of the termination of employ-

ment.' Cf. *Paul* v. *Davis,* 424 U.S. 693, 710 (1976). Yet the city twice refused petitioner's request that he be given written specification of the charges against him and an opportunity to clear his name. Under the circumstances, we have no doubt that the Court of Appeals correctly concluded that the city's actions deprived petitioner of liberty without due process of law."

The majority found, as appellee so urged, that the statements in appellee's affidavit in opposition to appellant's motion for summary judgment, most notably the one that follows, raised a material issue of fact within the rule of *Owen, supra:*

"1. That his reputation has been damaged by his being fired, without reasons given * * * in that he has received a great deal of unwanted and unneeded publicity which speculates in a manner which is damaging to his integrity and honesty."

Contrary to the majority's finding, this allegation, in my opinion, is insufficient to bring this case within the rule of *Codd-Owen.* First, the public employer herein was silent as to the reasons for the discharge. It neither created nor disseminated any information whatsoever regarding the discharge. These facts are in marked contrast to those of *Owen,* where the public employer accused the police chief of theft, implied drug dealings and bribery, released pertinent investigation reports to the press, and requested a grand jury investigation. The silence of the employer is outcome determinative, for as the United States Supreme Court noted in *Bishop* v. *Wood* (1976), 426 U.S. 341, 348, the termination of public employment can make the public employee "less attractive to other employers," but if the reasons of the public employer are "* * * not made public * * * [they] cannot properly form the basis for a claim that * * * [one's] interest in his 'good name, reputation, honor or integrity' * * * was thereby impaired."

Secondly, and as in *Codd,* the employee herein made no allegations that the information regarding the discharge was false or defamatory. Appellee retorts that since the appellant did not state reasons for his discharge, he could not develop information to formulate "allegations of specific misconduct." This assertion, however, ignores the facts that appellee never raised the issue of "official misconduct" as a question of fact nor sought, pursuant to discovery rules, to obtain proof of such conduct. The absence of such an allegation is fatal to appellee's claim, for "* * * if the hearing mandated by the Due Process Clause is to serve * * * [its purpose of providing the person with an opportunity to refute the charge, then], there must be some factual dispute between an employer and a discharged employee which has some significant bearing on the employee's reputation." *Codd, supra,* at page 627.

The result reached by the majority herein is curious in light of this court's recent holding in *Smith* v. *Fryfogle* (1982), 70 Ohio St. 2d 58, 62-63 [24 O.O.3d 114]. This court, in a unanimous decision, found that "the comments of a single, non-participating trustee, made after the official meeting, do not constitute an act of the board; we conclude that the board of trustees did not injure appellant's [fired township police chief's] reputation * * *." Indeed,

the facts in *Smith* were more compelling and more closely resembled those in *Owen* than those presented herein. Since this court was satisfied that no liberty interest had been infringed upon in *Smith* in the face of negative public statement by a township official, then it should likewise be satisfied that no due process right was violated when, as here, the public officials involved made no comments whatsoever.

The majority's position conveniently loses sight of one crucial fact: pursuant to the terms of the city charter, the police chief serves "at will." The majority has cited no statute or other controlling precedent which would, under the facts of the instant case, limit the employment-at-will doctrine. Hence, the city was under no obligation to state the reasons for the discharge as long as it refrained from creating any impression with regard to the discharge by releasing false or defamatory information with respect to the discharge.

There is little doubt that whenever a public servant's at-will employment is terminated, there will be adverse inferences and speculations. Under the majority's analysis, the removal or dismissal of any public employee employed at will which is reported by the press will seemingly require a hearing. In effect, the majority has done away with at-will employment in Ohio, for the majority mandates that a public employer provide justification for all discharges. This is indeed antithetical to at-will employment. This result clearly defeats the purpose of having certain public employees in non-civil service status and hence runs counter to sound public policy.

Under proper circumstances, a non-classified public employee has a right to a name clearing hearing. In the instant case, however, the employee simply failed to plead sufficient facts demonstrating his entitlement to a name clearing hearing, and I would thus reverse the decision of the court of appeals which afforded such a hearing.

CELEBREZZE, C.J., and SWEENEY, J., concur in the foregoing dissenting opinion.