OPINION
Plaintiff-appellant, Wayne Fields, appeals the decision of the Warren County Court of Common Pleas granting summary judgment to Tom Ariss, Warren County Sheriff, and the Warren County Sheriff's Office ("Sheriff's Office").
The facts are stipulated. In July 1995, the Sheriff's Office and the Fraternal Order of Police, Ohio Labor Council, Inc., entered into a collective bargaining agreement for the sworn employees of the Sheriff's Office which was to be effective until June 2, 1998. On April 7, 1998, Fields became a full-time deputy sheriff employed by the Sheriff's Office. He was subject to a probationary employment period until April 7, 1999.
On December 17, 1998, the Warren County Deputy Sheriffs' Benevolent Association, as representative for the sworn employees of the Sheriff's Office, and the Sheriff's Office entered into the instant Collective Bargaining Agreement ("CBA"). The probationary employment provision in CBA, Article 7, was identical to the probationary employment provision in the previous agreement.
On January 6, 1999, Fields' employment with the Sheriff's Office was terminated. The notice of termination included that he was being terminated for violations of rules, insubordination, and failure to observe state laws. The basis for these reasons were Fields' disruption of office operations by distracting other employees, smoking just outside the office while on duty, using a Sheriff's Office vehicle for off-duty purposes, and driving a private vehicle without a front license plate.
When terminated, Fields met with Chief Deputy Del Everett who advised Fields of the basis for his removal, and who gave him the opportunity to respond to the reasons for his dismissal. In June 1999, Fields filed the instant complaint seeking a declaration of his rights and monetary damages. The parties filed stipulations of fact and cross-motions for summary judgment.
The trial court denied Fields' motion for summary judgment, but granted summary judgment to Sheriff Ariss and the Sheriff's Office. The trial court found that CBA Article 7, as governing probationary employment, provided that Fields' employment could be terminated at any time for any reason. Furthermore, Fields could not assert a property right to his probationary employment, and the Sheriff's Office did not infringe his constitutional rights. Fields appeals raising two assignments of error.
Assignment of Error No. 1:
 THE TRIAL COURT ERRED IN GRANTING THE APPELLEE'S MOTION FOR SUMMARY JUDGMENT AND OVERRULING THE APPELLANT'S MOTION FOR SUMMARY JUDGMENT, AS TO THE APPELLANT'S CONTRACT CLAIMS.
In his first assignment of error, Fields contends that the trial court should have granted his motion for summary judgment. He asserts that the CBA has conflicting provisions regarding his rights upon termination, and that this alleged conflict should have been resolved by interpreting the CBA to his favor because he was not personally involved in the collective negotiations.
Pursuant to Civ.R. 56(C), the trial court may grant summary judgment where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.Welco Industries, Inc. v. Applied Cos. (1993), 67 Ohio St.3d 344,346. In deciding whether there is a genuine issue of material fact, the evidence must be construed in the nonmoving party's favor. Hannah v. Dayton Power Light Co. (1998), 82 Ohio St.3d 482,485. In reviewing the moving party's motion, a trial court should award summary judgment with caution. Welco Industries,67 Ohio St.3d at 346. Nevertheless, summary judgment is appropriate where a plaintiff fails to produce evidence supporting the essential elements of his claim. Id. In determining whether the plaintiff demonstrated the elements of his claim, an appellate court must independently review the record to determine if summary judgment was appropriate. Beardsley v. Manfredi Motor Transit Co.
(1994), 97 Ohio App.3d 768, 769.
The interpretation of a written agreement is a matter of law for the court. Alexander v. Buckeye Pipe Line Co. (1978),53 Ohio St.2d 241, paragraph one of the syllabus. The paramount objective in construing a written agreement is to ascertain the parties' intent. Aultman Hosp. v. Community Mut. Ins. Co. (1989),46 Ohio St.3d 51, 53. The agreement must be given a just and reasonable construction which carries out the parties' intent, as evidenced in the contractual language. Skivolocki v. East Ohio Gas Co.
(1974), 38 Ohio St.2d 244, paragraph one of the syllabus.
If a contract is clear and unambiguous, the court need not go beyond the plain language of the agreement to determine the parties' rights and obligations; instead, the court only gives effect to the agreement's express terms. Uebelacker v. CincomSystems, Inc. (1988), 48 Ohio App.3d 268, 271, citing SeringettiConstr. Co. v. Cincinnati (1988), 51 Ohio App.3d 1, 4. The court may not formulate a new contract for the parties. Aultman,46 Ohio St.3d at 54-55. Where a contract is plain and unambiguous, it does not become ambiguous because its operation may work a hardship upon one party. Ohio Crane Co. v. Hicks (1924), 110 Ohio St. 168,172.
Collective bargaining agreements between public employers and employees are governed by R.C. Chapter 4117, which contains provisions stating what matters may be negotiated through collective bargaining. R.C. 4117.10 provides:
 (A) An agreement between a public employer and an exclusive representative entered into pursuant to this chapter governs the wages, hours, and terms and conditions of public employment covered by the agreement. * * * Where no agreement exists or where an agreement makes no specification about a matter, the public employer and public employees are subject to all applicable state or local laws or ordinances pertaining to the wages, hours, and terms and conditions of employment for public employees.
* * *
 (C) The * * * designated representative of the board of county commissioners and of each elected officeholder of the county whose employees are covered by the collective negotiations * * * is responsible for negotiations in the collective bargaining process; except that the legislative body may accept or reject a proposed collective bargaining agreement. When the matters about which there is agreement are reduced to writing and approved by the employee organization and the legislative body, the agreement is binding upon the legislative body, the employer, and the employee organization and employees covered by the agreement.
R.C. 4117.08(A) states that "[a]ll matters pertaining to wages, hours, or terms and other conditions of employment and the continuation, modification, or deletion of an existing provision of a collective bargaining agreement are subject to collective bargaining between the employer and the exclusive representative, except as otherwise specified in this section." The remaining subsections of R.C. 4117.08 set forth matters which may either not be negotiated or which the employer retains the right to control.
When interpreting a collective bargaining agreement, the agreement should not be read against a single party unless the language or intent of the agreement clearly indicates otherwise. As discussed by the Supreme Court of Ohio in Cuyahoga Falls Edn.Assn. v. Cuyahoga Falls City School Dist. Bd. of Edn. (1991),61 Ohio St.3d 193, 196-197:
 [W]e are bound by R.C. Chapter 4117 to follow the language of the agreement and recognize that the parties stand on equal footing with one another. As the court stated in State, ex rel. Rollins v. Cleveland Hts.-University Hts. Bd. of Edn.
(1988), 40 Ohio St.3d 123, 127, * * * "collective bargaining is not a one-way street. We are not inclined to emasculate collective bargaining in public employment. * * * (O)ne side cannot be released from the bargain while the other side is bound. By providing that the contract governs conditions of employment, the General Assembly has indicated its preference for enforcing those terms of an agreement which were arrived at through open negotiation at the bargaining table, regardless of which party is advantaged." * * * Thus, a fair reading of Rollins indicates that unless otherwise excepted by R.C. 4117.10(A), provisions in a collective bargaining agreement arrived at mutually should not be narrowly construed against either party. Instead, when parties to a collective bargaining agreement have negotiated a provision pertaining to wages, hours, or terms and conditions of employment and there is a conflict either with the express language or the judicial interpretation given to a similar provision of the Revised Code, the interpretation of the agreement prevails.
Turning to the instant case, CBA Article 7, Probationary Periods, governs the probationary period any newly hired employee must serve before receiving permanent employment. CBA Article 7 provides:
 Section 7. Every newly hired employee shall be required to successfully complete a probationary period. The probationary period shall begin on the first day for which the employee receives compensation from the Employer and shall continue for a period of one (1) calendar year. An employee serving an initial probationary period may be terminated at any time and shall have no right to appeal the termination. Any employee who successfully bids on a permanent assignment shall serve a probationary period of one hundred twenty (120) calendar days. If the employee's performance in the new position is unsatisfactory, the employee shall be returned to his/her former position during such period.
* * *
 Section 7.4. Upon successful completion of the probationary period, a newly hired employee's seniority shall be computed from the date of hire.
An employee still serving a probationary period may not attempt to seek assignment to any specialized duty. CBA Article 9, Section 9.1.
CBA Article 10, Discipline, governs the disciplinary procedures for permanent employee work violations. CBA Article 10, Section 10.1 provides:
 The tenure of every bargaining unit employee shall continue with good behavior and efficient service. No employee shall be reduced in pay, suspended, discharged, removed, or otherwise disciplined except for just cause.
The remaining sections of CBA Article 10 set forth how disciplinary procedures proceed, from the initial investigation and verification of complaints to a formal hearing, with attendant procedures. Building upon the disciplinary provisions, CBA Article 11, Grievance Procedure, sets forth how a bargaining unit employee may appeal action taken against him/her under CBA Article 10. This grievance procedure may lead to arbitration upon the request of the Benevolent Association. CBA Article 11, Section 11.5. CBA Article 11, Section 11.15 concludes:
 Disciplinary actions of verbal reprimand (time and date recorded) and written reprimand may be appealed through the grievance procedure, but not the arbitration procedure. Grievances arising from lost pay discipline (suspension, reduction, or discharge) shall be initiated at Step 2 [CBA Article 11, section 11.3] of this procedure.
When reading these sections as a whole, the relative rights of probationary and permanent employees are clearly delineated. Probationary employees are subject only to CBA Article 7 which provides that they may be discharged "at any time" and they "shall have no right to appeal the termination." By contrast, permanent employees are subject to CBA Articles 10 and 11 which provide that they may be disciplined only for "just cause," with the CBA setting forth appropriate procedures by which they may appeal the discipline through the grievance and arbitration procedures included in CBA Article 11.
Fields asserts that Article 10 is ambiguous as it is phrased in terms of "employees" rather than "probationary employees." He argues that his discharge is therefore subject to the "just cause" provision of CBA Article 10, Section 10.1. Fields clearly fails to realize the result of such a reading of the CBA. Should this court follow such reasoning, CBA Article 7, Section 7.1 would become a nullity because not only would probationary employees be subject to discharge only for "good cause," they would also be entitled to initiate the appeal and grievance procedures in CBA Article 11. This interpretation of the CBA is incorrect for two reasons. First, CBA Article 7 explicitly governs probationary employees. Second, it is more than apparent that the negotiators of the CBA did not intend Field's suggested result as CBA Article 7 specifically states that probationary employees may be discharged "at any time" with "no right to appeal."[1]
The trial court correctly found that CBA Article 7 governed Fields' discharge. Under this provision, he was discharged within his probationary period, thus he had no right to appeal his discharge. The trial court properly granted the Sheriff's Office and Sheriff Ariss' motion for summary judgment. The assignment of error is overruled.[2]
Assignment of Error No. 2:
 THE TRIAL COURT ERRED IN GRANTING THE APPELLEE'S MOTION FOR SUMMARY JUDGMENT AS TO THE APPELLANT'S CONSTITUTIONAL CLAIM.
In his second assignment of error, Fields contends that the trial court erred in granting summary judgment against his claims that his discharge deprived him of his rights to due process. He further alleges that his discharge deprived him of his liberties to association and his reputation. Fields asserts these rights by alleging violations of Section 1983, Title 42, U.S. Code.
As noted above, the trial court may grant summary judgment where, as a matter of law, there is no genuine issue as to any material fact. Welco Industries, 67 Ohio St.3d at 346.
Where a governmental employee is found to have a property interest in continued employment, the Due Process Clause of theFourteenth Amendment to the United States Constitution forbids discharge unless the employee is afforded a pre-termination hearing. Cleveland Bd. of Edn. v. Loudermill (1985),470 U.S. 532, 541, 105 S.Ct. 1487, 1493; McCarthy v. Bd. of Trustees ofErie Community College (W.D.N.Y. 1996), 914 F. Supp. 937, 941. This property interest is created not by the United States Constitution, but by "existing rules or understandings that stem from an independent source such as state law." Loudermill,470 U.S. at 538, 105 S.Ct. at 1491. In order to establish a claim under Section 1983, Title 42, U.S. Code, the employee must demonstrate that his procedural due process rights were violated.Merritt v. Canton Twp. Bd. of Trustees (1998), 125 Ohio App.3d 533,537. Thus, to establish a due process violation, the employee must show, first, that he has a recognized liberty or property interest in his employment, and, second, that the conduct complained of deprived him of this liberty or property interest without adequate procedural safeguards. Id., citing Bd. ofRegents of State Colleges v. Roth (1972), 408 U.S. 564, 469,92 S.Ct. 2701, 2705. In general, a probationary civil service employee has no claim of a property interest in continued government employment sufficient to warrant procedural due process protections. Walton v. Montgomery Cty. Welfare Dept. (1982),69 Ohio St.2d 58, 63-64; Clark v. Ohio Dept. of Transp. (1993),89 Ohio App.3d 96, 99.
Sheriff's deputies are members of the Ohio state civil service.Yarosh v. Becane (1980), 63 Ohio St.2d 5, 13; see Davis v. StatePersonnel Bd. of Review (1984), 20 Ohio App.3d 150, 154. Thus, should a deputy attain permanent classified civil service status, the sheriff may not remove the deputy without following the procedures for such removal under R.C. 124.34. Yarosh, 63 Ohio St.3d at paragraph five of the syllabus. R.C. 124.34 provides:
 The tenure of every officer or employee in the classified service of the state and the counties * * * holding a position under this chapter of the Revised Code, shall be during good behavior and efficient service and no such officer or employee shall be reduced in pay or position, fined in excess of five days' pay, suspended, or removed, except as provided in section 124.32 of the Revised Code, and for incompetency, inefficiency, dishonesty, drunkenness, immoral conduct, insubordination, discourteous treatment of the public, neglect of duty, violation of such sections or the rules of the director of administrative services or the commission, or any other failure of good behavior, or any other acts of misfeasance, malfeasance, or nonfeasance in office.
The remaining parts of R.C. 124.34 set forth how a disciplined permanent civil service employee may appeal the disciplinary action to the relevant civil service authorities and commissions.
Before becoming a permanent member of the civil service, though, a deputy must serve a probationary period. The terms of this probationary period are stated in R.C. 124.27:
 All original and promotional appointments * * * shall be for a probationary period, not less than sixty days nor more than one year, to be fixed by the rules of the director, except as provided in section 124.231 of the Revised Code, or except original appointments to a police department as a police officer, or to a fire department as a fire fighter which shall be for a probationary period of one year, and no appointment is final until the appointee has satisfactorily served the probationary period. * * * If the service of the probationary employee is unsatisfactory, the employee may be removed or reduced at any time during the probationary period after completion of sixty days or one-half of the probationary period, whichever is greater.
Even though permanent civil service employees are granted substantial rights by the Revised Code, R.C. 124.27 makes clear that probationary employees do not have an entitlement to continued employment, and thus they are not afforded the due process rights given to permanent employees. State ex rel.Canfield v. Frost (1990), 53 Ohio St.3d 13, 13-15; Taylor v.Middletown (1989), 58 Ohio App.3d 88, 91; Clark,89 Ohio App.3d at 99. Where a collective bargaining agreement contains a grievance procedure, but also provides that probationary employees may be terminated at any time with no right to appeal their termination, the terms of the collective bargaining agreement govern the employment relationship. Fields v. SummitCty. Executive Branch (1992), 83 Ohio App.3d 68, 72-73.
Fields was appointed as a deputy sheriff under the terms of the CBA. CBA Article 7, Section 7.1, like R.C. 124.27, explicitly provided that he must first serve a one year probationary period during which his employment could be terminated "at any time" with "no right to appeal." Fields did not have any right to continued employment that would give rise to due process protections.[3]
Absent a property interest, a name-clearing hearing is required only if the employer creates and disseminates a false and defamatory impression about the employee in connection with his termination so as to infringe his right to liberty. Merritt,125 Ohio App.3d at 537, citing State ex rel. Kilburn v. Guard (1983),5 Ohio St.3d 21, 23, certiorari denied, 464 U.S. 893,104 S.Ct. 240. A liberty right is infringed where a false statement of a stigmatizing nature, attending a governmental employee's discharge, is made public by the governmental employer without a meaningful opportunity for the employee to clear his name.Merritt, 125 Ohio App.3d at 538, citing Buxton v. Plant City
(C.A.11, 1989), 871 F.2d 1037, 1042-1043. Defamatory statements, standing alone, do not constitute a deprivation of liberty interests. Thomson v. Scheid (C.A.6, 1992), 977 F.2d 1017, 1020, certiorari denied (1993), 508 U.S. 910, 113 S.Ct. 2341. Rather, the supposed defamatory reasons for the employee's discharge must concern the employee's discharge, id., be published in some form,Carter v. W. Res. Psych. Hab. Ctr. (C.A.6, 1985), 767 F.2d 270,273, and the reasons for the dismissal must so denigrate the employee that he cannot find other employment. Little v. Fed.Res. Bank of Cleveland (N.D.Ohio. 1985), 601 F. Supp. 1372, 1375.
In the instant case, there is no evidence that the reasons for Fields' discharge were made public. Nor is there any evidence to support a claim that he cannot find other employment as a law enforcement officer. Without evidence of public comment by the governmental employee or a loss of employment opportunity, there is no basis by which to find that Fields was deprived of his liberty interests.
Fields asserts that his discharge was because of his personal relationship with a female deputy. The only evidence in the record in support of this claim is Fields' own unsubstantiated belief. The letter given to Fields regarding his termination expressly states that he was discharged for violations of office rules, using an official vehicle for off-duty purposes, and violations of the state's vehicle licensing requirements. There is no evidence in support of the claim that Fields' rights and liberties were violated by his termination.
The trial court properly found that Fields was not entitled to any procedural due process rights and that his liberty rights were not infringed by his discharge. The assignment of error is overruled.
Judgment affirmed.
 _________________________ YOUNG, P.J.
WALSH and VALEN, JJ., concur.
[1] We will not discuss Fields' patently frivolous argument that the CBA should be construed in his favor because he was not personally involved in its negotiations. The Benevolent Association negotiated on behalf of all deputies. R.C. 4117(C) thus binds Fields as the CBA was negotiated on his behalf by the Benevolent Association.
[2] We point out that if this court were to find that CBA Articles 10 and 11 governed this case, Fields claim that the CBA was violated would fail as he did not follow the appeal and grievance procedures in the CBA, a necessary step in pursuing any further litigation.
[3] Even had this court found that Fields was entitled to due process protections as a civil service employee, his claim that his due process rights were violated would have to fail because he did not first take advantage of the extensive administrative procedures of appeal and review that the Revised Code provides to permanent civil service employees.