OPINION *Page 2 
{¶ 1} Defendant-appellant, Jason McDowell (hereinafter "McDowell"), appeals the judgment of the Auglaize County Court of Common Pleas. For the reasons that follow, we affirm.
 {¶ 2} On April 5, 2007, McDowell was indicted on one count of ethnic intimidation by aggravated menacing in violation of R.C.2927.12(A)/2903.21(A), a fifth degree felony. The trial court found the defendant indigent and appointed the Auglaize County Public Defender as defense counsel. On May 7, 2007, S. Mark Weller filed a notice of counsel informing the trial court that he would be the attorney of record and would be substituting for Gerald Siesel.
 {¶ 3} On June 5, 2007, McDowell filed a pro se motion in which McDowell said he "voluntarily waives his right to trial counsel." Attorney Weller filed a motion to withdraw as McDowell's legal counsel on June 14, 2007.
 {¶ 4} On June 18, 2007, the trial court inquired into the aforementioned motions. McDowell decided to have Attorney Weller represent him. That same day, the jury trial was held and McDowell was found guilty.
 {¶ 5} The trial court subsequently sentenced McDowell to twelve months imprisonment. The trial court further stated,
 [t]he Court has further notified the Defendant that Post Release Control in this case is for THREE (3) years, as well as the consequences for violating conditions of Post Release Control *Page 3 imposed by the Parole Board under Ohio Revised Code § 2967.28. The Defendant is ORDERED to serve as part of this sentence any term of Post Release Control imposed by the Parole Board, and any prison term for violation of that Post Release Control.
(J.E. 6/19/07).
 {¶ 6} It is from this judgment that McDowell appeals and asserts two assignments of error for our review.
 ASSIGNMENT OF ERROR NO. I The trial court deprived Mr. McDowell of his rights to counsel and to due process under the Ohio and United States Constitutions when it failed to properly inquire into Mr. McDowell's request to substitute counsel and when it failed to appoint substitute counsel based upon the breakdown of the attorney-client relationship and the conflict of interest that had arisen between Mr. McDowell and his appointed counsel. (Tr. pp. 5-16.)
 {¶ 7} In his first assignment of error, McDowell argues that the trial court should have treated his motion to waive his right to trial counsel as a motion for substitute counsel. According to McDowell, the trial court failed to inquire into the basis for McDowell's dissatisfaction with his trial attorney or into Attorney Weller's concerns about representing McDowell. McDowell maintains that the trial court denied McDowell his right to counsel and due process under the Ohio and United States Constitutions because it: 1.) failed to inquire into the complete break down of the attorney-client relationship and whether a conflict of interest had arisen; and 2.) failed to appoint substitute counsel. *Page 4 
 {¶ 8} The "[substitution of counsel is within the discretion of the trial court." State v. Kirk, 3d Dist. No. 14-06-28, 2007-Ohio-1228, ¶ 56, citing Wheat v. U.S. (1988), 486 U.S. 153, State v. Jones,91 Ohio St.3d 335, 343-44, 2001-Ohio-57. Accordingly, the trial court's decision on substitution of counsel is reviewed under an abuse of discretion standard. Id., citing State v. Murphy (2001), 91 Ohio St.3d 516, 523,2001-Ohio-112. An abuse of discretion implies that the decision was unreasonable, arbitrary, or unconscionable. Id., citing Blakemore v.Blakemore (1983), 5 Ohio St.3d 21, 219; State v. Adams (1980),62 Ohio St.2d 151, 157-58.
 {¶ 9} As this court has previously stated, "[a]n indigent criminal defendant has a Sixth Amendment right to competent counsel; however, this constitutional right does not extend to a right to counsel of the defendant's choosing." Id. at ¶ 57, citing Thurston v. Maxwell (1965),3 Ohio St.2d 92, 93. A defendant's right to trial counsel "does not include a right to a meaningful or peaceful relationship between counsel and the defendant." Id., citing State v. Blakenship (1995),102 Ohio App.3d 534, 558, citing Morris v. Slappy (1983), 461 U.S. 1, 13;State v. Crew, 8th Dist. No. 86943, 2006-Ohio-4102, ¶ 16, citations omitted.
 {¶ 10} An indigent defendant "may discharge a court-appointed attorney only `upon a showing of good cause, such as a conflict of interest, a complete break-down in the attorney-client relationship or an irreconcilable conflict which *Page 5 
leads to an apparently unjust result.'" Id. at ¶ 58, quotingBlakenship, 102 Ohio App.3d at 558; other citations omitted.
 {¶ 11} McDowell filed a pro se motion to waive his right to trial counsel on June 5, 2007. Attorney Weller also filed a motion to withdraw as McDowell's legal counsel on June 14, 2007.
 {¶ 12} On June 18, 2007, the day of the jury trial, the trial court inquired into McDowell and Attorney Weller's motions. (Tr. 6/1807 at 4-16). The following discussion occurred:
 JASON MCDOWELL: Can, -uh, -can you, -you can't answer any questions about these Klu Klux Klan pictures I got Friday from the Prosecutor?
 THE COURT: I have no idea what those are.
 * * *
 JASON MCDOWELL: Well I'm just saying I haven't had a chance to go over that with anybody or any of this evidence. I haven't had a chance to do nothin'. That's the reason I don't want counsel of Mr. Weller for my Counsel. Evidence,
 * * *
 THE COURT: Mr. Augsburger, was there additional Discovery filed Friday?
 MR. AUGSBURGER: It was sent to Mr. Weller last week as to potential demonstrative evidence. THE COURT: Why?
 MR. AUGSBURGER: Going through trial prep, one of the references made, at least from what the victim said, was in reference to a cross burning, so the potential of using the photograph of a cross burning as demonstrative evidence. THE COURT: Why wasn't it disclosed timely, like before final pre-trial?
 MR. AUGSBURGER: Going through trial prep and trial strategy as to what I may want to use as demonstrative evidence, I didn't think about that issue until after last week. Last week I *Page 6 was in another jury trial and was worrying about prep for that one and things backed up.
 THE COURT: Don't hold your breath on using stuff just disclosed last week that is things like demonstrative evidence that could be thought through way earlier than last week. * * * Mr. McDowell, I strongly encourage you to accept the benefit of having legal Counsel. At the same time, if you wish to represent yourself you may. I need to make sure you understand that if you're representing yourself, you will not have the benefit of legal counsel representing you. Do you understand?
 JASON MCDOWELL: I don't-I don't feel that I would be able to represent myself in the best of my interest, but I don't feel that Mr. Weller would be able to do that either.
 THE COURT: Well, it's your choice, Mr. McDowell. You filed this June 5, petition to waive right to legal counsel. And based upon that, Mr. Weller has asked to withdraw because of your indication of your intention to waive legal counsel and represent yourself, but Mr. Weller also was instructed to be here and be ready to go as of final pre-trial. So Mr. McDowell, we have a jury ready to go. You represent yourself or Mr. Weller represents you. Which is it?
 JASON MCDOWELL: I guess I'll have Mr. Weller * * *
 THE COURT: * * * So as to your waiver of counsel versus your non-waiver of counsel Mr. McDowell, which is it?
 JASON MCDOWELL: Well I'll HAVE MR. WELLER REPRESENT ME.
 THE COURT: Very well. Mr. Weller, your request to withdraw as legal counsel of the Defendant is based upon the Defendant's filing his petition to waive his right to Counsel.
 * * *
 MR. WELLER: Very well. I still WISH TO BE RELEASED
 AS COUNSEL. I'm being set up here. This Defendant has refused to follow legal advice. He's refused to cooperate by providing me information that would be absolutely necessary for effective assistance of Counsel. He's shown up here today by his own choosing in his own jail garb after I specifically sat down and told him he needed to be here in civilian clothes. I could see this coming, so I made a special point to sit down with him on Friday, gave him every opportunity to go through each and every piece of evidence. I went through the order of trial. I told *Page 7 
him what would be required of him as counsel on his own behalf. Again told him that if he couldn't get clothing I would obtain clothing for him. He's absolutely done nothing. In fact, he's acted adversely to affect my attorney/client relationship. And I'm not going to go forward now and have him, as he's already said, go to prison immediately if he's sentenced and then file ineffective assistance of counsel or disciplinary actions against me. I'm being set up and I just can't allow it to happen. I have investigated every opportunity of whatever he's told me and I met with him twice at the jail. I've met with him twice over here at court. I've had phone conversations with him and he has expressed the same desire to represent himself and the same attitude that he wasn't gonna cooperate all along.
 * * * I'm not questioning his competency to stand trial, but his attitudes and demeanor to me have been impossible for me to have an attorney/client relationship with him. And the Court understands that I represented a client in this court who never said a word to me, you know, him never saying a word to me would have been better than the adverse actions that he's taken. So like I said, I'm being set up and I don't believe I can go forward under those circumstances.
 THE COURT: Mr. McDowell, you raised your hand.
 JASON MCDOWELL: I told him about some different things in my case and I was, — how I was assaulted and I brought this up and the next day after I went, — the next day after Mach 22nd after this happened, March 23rd when I went to Court I brought it in front of the Judge in Municipal Court and he had said the jail would take pictures. My girlfriend had told me that Mr. Weller had told her that I was a liar, my word wasn't no good as far as, — my mom, — my parents and my girlfriend had seen the lumps on the side of my head, left side of my head and he said that that didn't matter because I was a liar and I was prejudice. And that's the kind of — the same kind of response as what he's saying that I have and how I treat him is how he's been talking to my family about me, that I'm prejudice and I'm a liar and it doesn't matter the fact that there was an assault that took place during this case. That's — that don't matter.
 THE COURT: During the case? *Page 8 
 JASON MCDOWELL: At the beginning of the case. At the, — not the case, the, — when I was charged with what I was charged with.
 MR. WELLER: His allegation is that he was assaulted on the night that this, — immediately after the commission of this alleged offense. Between the time that the offense occurred and when he was arrested, he was detained by some citizens while the police got there and he's claiming that that was an assault. And I've checked that out. I've read through the Discovery. There was no report of any injuries and I told him that every one of these people that he claims assaulted him are under subpoena and will testify in this trial, — THE COURT: So you'll have the right to and the opportunity to, — 
 MR. WELLER: Cross examine them.
 THE COURT: —, cross examine them. Mr. McDowell, this is June 18th. This happened, in terms of the legal proceedings, the Indictment was returned April the 5th and was served April the 5th. You've had all of April and all of May and half of June to be ready for this trial today. The Defendant has the right to legal counsel and to whatever extent the Defendant chooses to participate and cooperate with his own Counsel is his choosing. The same way if he chooses to wear his yellow jail outfit rather than civilian clothes that he has available to him and can get available to him, that's his choice. But while we've given two and a half (21/2) months to prepare, — The Defendant has a right to a speedy trial. * * * I'm not hearing anything here that would amount to good cause for the Court to not go forward with this trial today. If the Defendant chooses not to participate or not to cooperate that his choice. * * * If the Defendant chooses to wait until this morning, — all I've got was a June 5 one (1) sentence, "Now comes Defendant, Jason McDowell and voluntarily waives his right to trial counsel." Dated June 4, filed June 5.* * *
 * * *
 THE COURT: Mr. McDowell, anything further?
 JASON MCDOWELL: No, Sir.
 THE COURT: Mr. Weller, anything further?
 MR. WELLER: I'll go forward and I'll represent the Defendant as long as he's willing to put on the record and acknowledge that *Page 9 he has failed to cooperate in the preparation of his case and that he's going to waive any deficiencies that that may cause.
 THE COURT: Mr. Weller, — MR. WELLER: Otherwise I'm set up.
 THE COURT: * * * the record is whatever the record is, Mr. Weller. If the Defendant chooses his course of action, he may choose that course of action.
 MR. WELLER: Well he just made some allegations that are entirely false. I've never made any statement to any member of his family with regard to him being a racist or him being a liar. There was one (1) discussion with his girlfriend, mother of his children, with regard to the fact that credibility of witnesses will be determined in open court and that's all I could do. I can't make anybody say one thing or another. And if he's construed that, that I've called him a liar, then he is mistaken.
 THE COURT: Well Mr. Weller, I didn't hear any firsthand knowledge by this Defendant concerning anything. What I heard was, —
 MR. WELLER: And he has none.
 THE COURT: — his concern that he had been told things by people.
 MR. WELLER: Well here again, I'm put in a position where now I'll go forward and he's pretty well determined the outcome of this matter by his attitude and the bottom line is, I'll go through the motions and do this and then when he ends up in prison and starts to take me to the disciplinary counsel and suing me for ineffective assistance or gets somebody that picks up a bare transcript and doesn't have a good record of just what's going on here then you know, again I feel set up. So I've said that for the record. I am prepared to go forward, Your Honor.
(Tr. 6/18/07 at 7-16).
 {¶ 13} After reviewing the record, we find the trial court did not abuse its discretion. McDowell filed a pro-se motion to voluntarily waive his right to trial counsel, rather than a motion to obtain a substitute counsel. On the record, *Page 10 
McDowell indicated that the reason he wanted new counsel was because counsel did not go over evidence with him. The trial court clearly inquired into whether the evidence was timely discovered.
 {¶ 14} Moreover, although the record indicates that there were some disagreement between McDowell and Attorney Weller, the disagreements were based on conversations that McDowell had with third parties regarding statements allegedly made by Attorney Weller. There is no indication that Attorney Weller did, in fact, call McDowell a liar or say that he was prejudiced, and Attorney Weller specifically denied that he had made any such comments. From the record, it appears as though there was merely a miscommunication between McDowell and Attorney Weller. In addition, Attorney Weller's statements regarding his belief that he was being "set up" were made so that he could establish a good record so that someone looking at the transcript would have a good record of what had occurred should a malpractice or disciplinary action be filed against him. Attorney Weller clearly indicated that he was prepared to proceed with the case, and McDowell decided to have Attorney Weller continue representation.
 {¶ 15} As a result, we find the record does not reveal that there was good cause to substitute Attorney Weller as a counsel, that a conflict of interest existed between Attorney Weller and McDowell, or that there was a complete or irreconcilable breakdown in the attorney-client relationship that would lead to an *Page 11 
unjust result. See Kirk, 2007-Ohio-1228, at ¶ 58, citations omitted. Accordingly, we hold that the trial court did not abuse its discretion when it did not appoint substitute counsel to represent McDowell.
 {¶ 16} McDowell's first assignment of error is, therefore, overruled.
 ASSIGNMENT OF ERROR NO. II The trial court erred when it imposed a three-year term of postrelease control for the offense of ethnic intimidation by aggravated menacing, a fifth-degree felony. This error deprived Mr. McDowell of his rights under R.C. 2967.28(C) and the due process clauses of the Ohio and United States Constitutions. (6/19/07 Entry.)
 {¶ 17} In his second assignment of error, McDowell argues that the trial court erred when it imposed a term of three years of postrelease control for a fifth degree felony.
 {¶ 18} Pursuant to R.C. 2967.28(C), an offender sentenced to a prison term for a fifth degree felony is subject to a term of post release control of up to three years. Since McDowell was convicted of a fifth degree felony, he was subject to a term of postrelease control of "up to" three years under R.C. 2967.28(C).
 {¶ 19} At the sentencing entry, the trial court sentenced McDowell to twelve months imprisonment "PLUS THREE (3) YEARS OF POST RELEASE CONTROL." (Tr. 6/18/07 at 320). In the sentencing entry, the trial court
 * * * further notified the Defendant that Post Release Control in this case is for THREE (3) years, as well as the consequences for violating conditions of Post Release Control *Page 12 imposed by the Parole Board under Ohio Revised Code § 2967.28. The Defendant is ORDERED to serve as part of this sentence any term of Post Release Control imposed by the Parole Board, and any prison term for violation of that Post Release Control imposed by the Parole board, and any prison term for violation of that Post Release Control.
(Sentencing Entry, 6/19/07).
 {¶ 20} "[T]he Parole Board has absolute discretion over the imposition of post-release control." State v. Sparks, 4th Dist. No. 03CA21,2003-Ohio-6300, ¶¶ 6, 13, citation omitted. In Sparks, the court found that even though the trial court expressed its opinion that a "three years post-release control would be appropriate", that the defendant would have to "be sentenced to three years of post-release control by the Parole Board before the issue would be ripe for judicial review." Id. at ¶ 13.
 {¶ 21} In the present case, although the trial court indicated that post release control was three years, the trial court also ordered that McDowell serve the term of post-release control imposed by the Parole Board. (Sentencing Entry, 6/19/07). Thus, we find that the trial court did not impose a three year term of postrelease control, but rather, notified McDowell that he would be subject to a three year term of postrelease control.
 {¶ 22} Accordingly, we overrule McDowell's second assignment of error. *Page 13 
 {¶ 23} Having found no error prejudicial to appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment Affirmed.
 SHAW, P.J., and WILLAMOWSKI, J., concur. r *Page 1