OPINION
Verna L. Snyder appeals from a judgment of the Greene County Court of Common Pleas, which granted the City of Fairborn's motion to dismiss her administrative appeal and granted Fairborn's motion for summary judgment on other claims related to her termination.
The procedural history of the case is as follows.
Snyder was hired by the Fairborn Municipal Court in 1984 and was appointed to the position of Assignment Commissioner in 1996. In January 2001, she was fired for poor performance. In February 2001, Snyder filed suit against the Municipal Court, the City Manager, and the Personnel Director (hereinafter collectively referred to as "Fairborn") claiming that she had been denied due process and that her termination had been motivated by her friendship with Joseph Stadnicar, who was running against the Municipal Court Judge in an upcoming election. Her complaint purported to have "two separate branches": an administrative appeal pursuant to R.C. 2506.01 and a complaint for damages and other relief. The case was referred to mediation, but the parties were unable to reach a settlement. On May 25, 2001, Fairborn filed motions for judgment on the pleadings and for summary judgment. The trial court granted these motions on August 22, 2001.
Snyder raises four assignments of error on appeal.
 "I. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN SUSTAINING ALL THE APPELLEE'S MOTIONS AND OVERRULING ALL THE APPELLANT'S MOTIONS."
Snyder claims that the trial court erred in granting Fairborn's motions for judgment on the pleadings and summary judgment. Snyder also claims that the trial court erred in overruling her motion for an extension of time to conduct discovery. We will address each of these decisions, beginning with the motion for summary judgment.
Fairborn's motion for summary judgment related to the second "branch" of Snyder's complaint, which alleged a violation of her due process rights in terminating her without a hearing, a violation of her civil rights, intentional infliction of emotional distress, defamation, a request for a writ of quo warranto, and a declaratory judgment regarding the legality of Fairborn's laws. The crux of all of her arguments, however, is that she was entitled to a hearing regarding her termination.
Civ.R. 56(C) provides that summary judgment may be granted when the moving party demonstrates that (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. State ex rel. Grady v. State Emp. Relations Bd., 78 Ohio St.3d 181,183, 1997-Ohio-221; Harless v. Willis Day Warehousing Co. (1978),54 Ohio St.2d 64, 66. The moving party "bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims." Dresher v. Burt, 75 Ohio St.3d 280, 293, 1996-Ohio-107. If the moving party satisfies its initial burden, "the nonmoving party then has a reciprocal burden * * * to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." Id.; see Civ.R. 56(E). The nonmovant may not rest on his pleadings, but must produce evidence on any issue for which he bears the burden of production at trial. Civ.R. 56(E), Dresher,75 Ohio St.3d at 293.
In its motion for summary judgment, Fairborn contended that Snyder had been an unclassified employee and, thus, an employee at will. Fairborn asserted that Snyder therefore had been not been entitled to a hearing or any of the other protections afforded to classified employees when her employment was terminated. In support of its position, Fairborn presented the following materials in conformity with Civ.R. 56(C) and (E). In an affidavit, Municipal Court Judge Catherine M. Barber stated that all employees of the Fairborn Municipal Court are in the unclassified service and that the Assignment Commissioner, in particular, is in the unclassified service. She also stated that, as an unclassified employee, the Assignment Commissioner of the Fairborn Municipal Court serves at the pleasure of the Municipal Court Judge. Barber affied that she had discharged Snyder from the position of Assignment Commissioner because of poor job performance and not because of Snyder's alleged personal or political affiliation with Joseph Stadnicar. She also stated that Snyder had accepted the benefits of unclassified service, that she had not been given a hearing regarding her termination because she had been in the unclassified service, and that she had not requested any type of a hearing.
Fairborn also presented the affidavit of Rose Trout, the city's Personnel Director. Trout authenticated Administrative Memoranda Nos. 106 and 183, which were issued by the City Manager on June 16, 1980 and May 20, 1996 respectively, two Fairborn Personnel Advisory Board rulings, the Fairborn City Charter, and the Fairborn Personnel Rules and Regulations. Administrative Memorandum No. 106 was a list of classified and unclassified services within the city's "employment structure," and it listed the Assignment Commissioner in the unclassified services. Administrative Memorandum No. 183 was a nearly identical listing, but it also contained a notation that "All Municipal Court and part-time employees are unclassified." (Emphasis sic.) A Personnel Advisory Board ruling issued on May 7, 1997, stated:
 "As per a long-standing practice with the City of Fairborn, all positions which are in the Municipal Court and whose people have been selected for hire by the Municipal Court Judge, shall be considered unclassified positions and shall have only those benefits and rights as given to unclassified positions as per the Personnel Rules and Regulations."
More specifically, the Personnel Advisory Board ruled on December 6, 1999, that:
 "[T]he person acting as an Assignment Commissioner is a principal assistant to the Judge. The person in this position handles secured documents. The Judge would experience major embarrassment if a court case was not heard according to strict time frames. As in all Court positions[,] trust, confidence, integrity and fidelity to the Judge are necessary, and possibly more necessary since the Judge is an elected official and much in the public eye.
"Therefore, the Personnel Advisory Board finds that the position of Assignment Commissioner is unclassified, and the duties and sensitivity of the position make it not conducive to competitive testing."
Fairborn also directed the trial court to the City Charter, which provides that "Court Clerks, bailiffs, and such officers and employees of the Municipal Court as it is found impracticable to determine their fitness by competitive examination in accordance with the provisions of the Personnel Rules and Regulations" are in the unclassified service. As discussed supra, the Personnel Board has found that the position of Assignment Commissioner is not conducive to competitive examination.
Fairborn's evidence satisfied its initial burden to inform the trial court of the basis for its motion for summary judgment by presenting documents establishing the city's treatment of the position of Assignment Commissioner as an unclassified position. This showing created a reciprocal burden on Snyder's part to set forth specific facts showing that there was a genuine issue for trial. Dresher, 75 Ohio St.3d at 293. Despite multiple extensions of the time for filing a response to the motion for summary judgment, Snyder failed to file a response. Thus, the exhibits attached to Snyder's "Brief of Appellants" were the only evidence offered in opposition to the motion for summary judgment. Exhibits A and B were unauthenticated portions of the Fairborn Charter and Personnel Rules and Regulations. These were portions of documents that had also been attached, in verified form, to Fairborn's motion. Exhibits C and E were identical copies of a job description for the Assignment Commissioner. Neither of the copies was authenticated, and the trial court refused to consider them for that reason. Exhibit D was an affidavit of Sandra D. Huggins, the Secretary-Chief Examiner of the Dayton Civil Service Board, who opined that an applicant's fitness for the position of Assignment Commissioner "can be practically determined by competitive examination." She relied upon the unauthenticated job description in making this determination.
The trial court properly found that there was no genuine issue of material fact regarding whether Snyder's employment had been employment at will or, in other words, whether she had been in the unclassified service. Huggins' opinion was just that an opinion and it did not establish that Fairborn's differing opinion was unreasonable. Moreover, Huggins' opinion was premised on a job description that was not properly before the court. Even if we were to assume that some of the Assignment Commissioner's responsibilities were amenable to competitive examination, the Personnel Advisory Board had concluded that trust, confidence, integrity, and fidelity were important qualities for the Assignment Commissioner to possess and that such qualities were not amenable to competitive examination. The Personnel Advisory Board's finding in this respect was reasonable, and Snyder presented no evidence to contradict it.
Snyder relies on our holding in Lewis v. Fairborn (1997),124 Ohio App.3d 292, for the proposition that working in the Municipal Court, in itself, is not enough to place one in the unclassified service. Snyder maintains that, pursuant to Lewis, "whether an applicant's fitness for the position of assignment commissioner can be practically determined by competitive examination is an issued that must be resolved." This statement alludes to the Lewis trial court's reliance on the "city's `long-term policy of considering the Fairborn Municipal Court employees as unclassified employees,'" which we rejected as a basis for determining classified or unclassified status, id. at 295, and may also refer to Administrative Memorandum No. 183, which states that all
municipal court employees are unclassified. We note, however, that inLewis, the position of the plaintiff-employee, Community Restitution Coordinator, had not been specifically addressed in any of Fairborn's administrative memoranda, its Personnel Advisory Board rulings, or its Charter. In other words, Fairborn had made no specific finding with respect to whether a Community Restitution Coordinator was in the classified or unclassified service except to say that all municipal court employees were in the unclassified service. In that circumstance, we held that Lewis had been entitled to a more particularized assessment of whether fitness for her position could be determined by competitive examination.
In this instance, however, the position of Assignment Commissioner has been specifically designated as an unclassified position on numerous occasions at least as far back as 1980. Moreover, the Personnel Advisory Board has expressly found that the position of Assignment Commissioner is not amenable to competitive examination because of its character requirements. Thus, while we agree with Snyder that Fairborn had been required to determine whether the position of Assignment Commissioner was amenable to competitive testing, there was no question that the city had made made such a determination in this case.
In addition to its argument on the merits of treating the Assignment Commissioner as an unclassified employee, Fairborn argues that Snyder should be estopped from claiming the protection of the classified service because she knew that her position was unclassified and she reaped the benefits of the unclassified position. The trial court did not address this issue.
The supreme court has held that, if a public employee "has served in an unclassified position and has enjoyed the benefits of the unclassified status, such as increased salary, then as a matter of equity and fairness, the employee should be precluded from claiming classified status in order to receive the statutory benefits afforded classified civil servants." Chubb v. Ohio Bur. of Workers' Comp., 81 Ohio St.3d 275,278, 1998-Ohio-628. It is undisputed that Fairborn had designated the position of Assignment Commissioner as an unclassified position as early as 1980, and that it had reaffirmed this position in May 1996, shortly before Snyder was sworn in. Judge Barber affied that Snyder had accepted the benefits of the unclassified status of her position, although she did not specify what those benefits were. Snyder presented no evidence of the kind required by Civ.R. 56(C) to dispute that she had knowingly and voluntarily accepted the benefits of an unclassified position. Because there was no genuine issue of material fact as to whether Snyder had accepted the benefits of an unclassified position, she was estopped from asserting that the position was actually a classified position.
Snyder also asserts that her termination was illegal because it was against public policy. This argument is based on her claim that she was really fired for her affiliation with Joseph Stadnicar, who intended to challenge Judge Barber for the position of Municipal Court Judge, rather than for poor performance. Snyder contends that such motivation for her termination violates public policy because it impinges on her First Amendment rights. If Snyder had presented the type of evidence contemplated by Civ.R. 56(C) in support of her contention that her termination had been politically motivated, we might agree that a genuine issue of material fact existed precluding summary judgment. However, she did not do so. Snyder presented no evidence regarding her relationship with Stadnicar or its effect on her employment. It is well settled that the allegations set forth in a complaint are insufficient to survive summary judgment; in response to such a motion, the nonmoving party may not rest on the pleadings but must produce evidence on any issue for which he bears the burden of production at trial. Civ.R. 56(E); Dresher,75 Ohio St.3d at 293. Because Snyder did not present evidence sufficient to create a genuine issue of material fact as to whether there had been improper political motives for her termination, summary judgment was proper.
We now turn to the trial court's judgment on the pleadings related to the first "branch" of Snyder's complaint, wherein she sought an administrative appeal pursuant to R.C. 2506.01.
When considering a defendant's Civ.R. 12(C) motion for judgment on the pleadings, the trial court is required to construe as true all the material allegations in the complaint, with all reasonable inferences to be drawn therefrom, in favor of the nonmoving party. Whaley v. FranklinCty. Bd. of Commrs., 92 Ohio St.3d 574, 581, 2001-Ohio-1287, citingPeterson v. Teodosio (1973), 34 Ohio St.2d 161, 165-166. Viewing the evidence in this manner, dismissal is appropriate if it is clear that the plaintiff could prove no set of facts in support of his claim that would entitle him to relief. State ex rel. Midwest Pride IV, Inc. v. Pontious,75 Ohio St.3d 565, 570, 1996-Ohio-459. Appellate review of a judgment on the pleadings is de novo, which requires an independent determination of whether judgment has properly been entered as a matter of law. Euvrardv. The Christ Hosp. (2001), 141 Ohio App.3d 572, 575.
In granting judgment on the pleadings, the trial court found that it lacked subject matter jurisdiction to consider this matter pursuant to R.C. 2506.01 because there was no underlying action from which to appeal.
R.C. 2506.01 provides:
 "Every final order, adjudication, or decision of any officer, tribunal, authority, board, bureau, commission, department, or other division of any political subdivision of the state may be reviewed by the court of common pleas of the county in which the principal office of the political subdivision is located * * *."
The supreme court has held that "in order for an administrative act to be appealable under R.C. 2506.01 such act must be the product of quasi-judicial proceedings." M.J. Kelley Co. v. Cleveland (1972),32 Ohio St.2d 150, 153. To be considered a quasi-judicial proceeding, the proceeding must resemble a court proceeding in that an exercise of discretion is employed in adjudicating the rights and duties of parties with conflicting interests. Thomas v. Beavercreek (1995),105 Ohio App.3d 350, 354. Furthermore, proceedings of administrative officers are not quasi-judicial where there is no requirement for notice, hearing, and the opportunity for the introduction of evidence.Kelley, supra, at paragraph two of the syllabus.
Fairborn's termination of Snyder's employment clearly did not involve quasi-judicial proceedings because it did not adjudicate the rights of parties with conflicting interests and because the city was not required to give notice or to conduct a hearing prior to firing Snyder. As such, the trial court correctly determined that there was no underlying action from which to file a R.C. 2506.01 appeal and that it therefore lacked jurisdiction to consider the first "branch" of Snyder's complaint.
Having addressed the central issues of whether the judgment on the pleadings and summary judgment were appropriate, we now turn to several others issues raised by Snyder under this assignment of error. Snyder claims that the trial court arbitrarily limited discovery by denying her third motion for an extension of time to conduct discovery. Snyder also claims that the trial court erred in failing to consider Exhibits A, B, C, and E, which were attached to her "Brief of Appellants" in the trial court.
In overruling the third motion for an extension to conduct discovery, the trial court found that Snyder had known of Fairborn's contentions for more than four months and "continued to fail to conduct discovery they deem necessary to defend against and thwart" the motions. Indeed, the motion itself seems to concede that Snyder had not yet begun to conduct discovery by the time she sought her third extension to respond to Fairborn's motions. While extensive discovery may have been appropriate had this case survived summary judgment, we agree with the trial court that Snyder's ostensible need for discovery was insufficient to justify her continued delay in filing a response to the motion for summary judgment. Snyder's own affidavit expounding upon her reasons for believing that her termination had been politically motivated and that her position had been classified might well have been sufficient. The trial court acted within its discretion in concluding that the proffered reason was insufficient to justify additional delay.
Snyder also objects to the trial court's refusal to consider Exhibits A, B, C, and E on the bases that they were unauthenticated and did not comply with Civ.R. 56. Civ.R. 56(C) states:
 "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule."
Snyder's exhibits clearly did not fall within any of the categories of evidence that the trial court was permitted to consider.
The first assignment of error is overruled.
 "II. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN MISAPPLYING BOTH THE SUBSTANTIVE AND PROCEDURAL LAW APPLICABLE TO THE CASE."
Under this assignment of error, Snyder reiterates her claim that she was a classified employee. She also seems to argue, in the alternative, that there is no employment at will in the public sector because "one cannot wrongfully terminate a public employee absent a showing of cause."
We have already addressed Snyder's claim that she was a classified employee. Fairborn presented abundant documentary evidence that the position of Assignment Commissioner was an unclassified one, and Snyder did not refute this evidence in accordance with Civ.R. 56(C). Thus, we turn to Snyder's argument that she was entitled to a hearing even if she was not a classified employee. This claim turns the distinction between a classified and unclassified employee on its head. An unclassified employee is an employee at will and thus can be terminated for any non-discriminatory reason or for no reason at all. An unclassified employee is appointed at the discretion of the appointing authority and serves at the pleasure of the appointing authority. Employees in unclassified service hold their positions at the pleasure of the appointing authority, may be dismissed from their employment without cause, and are afforded none of the procedural safeguards available to those in classified service. Suso v. Ohio Dept. of Dev. (1993),93 Ohio App.3d 493, 499; Huber v. Celebrezze (1984), 14 Ohio App.3d 299,301. Thus, an unclassified employee may be discharged without a hearing. Shearer v. Cuyahoga Cty. Hosp., Sunny Acres (1986),34 Ohio App.3d 59, 60. See, also, Merritt v. Canton Twp. Bd. ofTrustees (1998), 125 Ohio App.3d 533, 537. Snyder's claim that she was entitled to a hearing even if she was an unclassified employee is without merit.
Snyder also claims that the distinction between classified and unclassified employees violated her equal protection rights. Snyder recognizes that she does not fall within a suspect class and that the city's actions therefore must only have a rational basis to survive constitutional scrutiny. Rational-basis scrutiny is the most relaxed and tolerant form of judicial scrutiny under the Equal Protection Clause.Dallas v. Stanglin (1989), 490 U.S. 19, 26, 109 S.Ct. 1591, 1596. Fairborn demonstrated through its Personnel Advisory Board ruling that unclassified employees are so designated because their positions require trust, confidence, integrity, and fidelity to the Judge. Judge Barber's affidavit also demonstrated that unclassified employees receive benefits that do not inure to classified employees. These benefits presumably offset the lack of procedural safeguards for the unclassified service. Snyder did not refute these assertions, which do establish a rational basis for the classification scheme. As such, there was no genuine issue of material fact as to whether the classification scheme had a rational basis.
Snyder also claims that she was wrongfully terminated because the Fairborn Charter provides that an employee cannot be removed except for "incompetency, inefficiency, dishonesty, * * * neglect of duty, * * * or any other failure of good behavior, or any other acts of misfeasance, malfeasance, or nonfeasance on the performance of his duty." She concedes that her termination was based on neglect of duty but claims that this basis was "not supported by credible, reliable, or substantial evidence." Judge Barber's affidavit stated that Snyder's job performance had been poor. Although not tracking the language of the Charter, Barber's statement that Snyder's work had been poor supports the inference that she had been incompetent, inefficient, or had failed to demonstrate good behavior as required by the Charter. Snyder did not present any evidence of the type specified in Civ.R. 56(C) to refute Barber's assertion, nor did she present any evidence to support her claim that she had been fired because of her political alliances. Therefore, there was no genuine issue of material fact as to whether Snyder had been fired for one of the reasons set forth in the Charter.
We note that Snyder repeatedly asserts that Fairborn has offered no evidence other than Judge Barber's self-serving affidavits to show that Snyder was not fired for political reasons. However, Snyder has offered no evidence at all to suggest that she was fired for political reasons. Quite simply, Snyder does not seem to understand that she could not rest on the allegations contained in her complaint in response to Fairborn's motion for summary judgment. See Civ.R. 56(E); Dresher,75 Ohio St.3d at 293. She had the burden to go forward with proof of the alleged improper reason for her termination, and she failed to do so. Thus, summary judgment was proper.
The second assignment of error is overruled.
 "III. THE COURT SHOULD ISSUE A WRIT OF QUO WARRANTO OR OTHER APPROPRIATE WRIT, OR RELIEF, REINSTATING THE APPELLANT PURSUANT TO THE SEPARATE COMPLAINT FOR SAME WITH SUPPORTING DOCUMENTS FILED AFTER THIS APPEAL."
Notwithstanding the title of this assignment of error, Snyder makes no argument with respect to a writ of quo warranto hereunder. Rather, she reasserts her argument that a public employee should never be treated as an employee at will. We addressed this argument supra, and we need not elaborate upon it here.
Snyder does raise other arguments under this assignment of error which have nothing to do with writs of quo warranto. For instance, Snyder contends that she was a classified employee because of the following: 1) her personnel records indicate that, although Judge Barber recommended her appointment to the position of Assignment Commissioner in 1996, the City Manager had actually been the person to make the appointment; and 2) the Fairborn Charter provides that only the City Manager shall "appoint, discipline, suspend, or remove employees * * * in the classified service." From these observations, Snyder concludes that all employees appointed by the City Manager are classified employees and that Barber did not have the authority to terminate her employment. Snyder's conclusion does not flow from the facts that she sets forth. The fact that the City Manager is charged with the appointment and removal of all classified employees certainly does not mean that all employees appointed by the City Manager are classified. We also note that the personnel records on which Snyder relies were not properly before the trial court.
Snyder also claims that she was entitled to a "name clearing hearing." Where an employee is unclassified and therefore has no property interest in his employment, a name-clearing hearing is required only if the employer creates and disseminates a false and defamatory impression about the employee in connection with his termination. State ex rel. Kilburnv. Guard (1983), 5 Ohio St.3d 21, 23; Merritt, 125 Ohio App.3d at 537. Although Snyder alleged defamation in her complaint, she provided no evidence pursuant to Civ.R. 56(C) in support of this assertion. Defamation is the unprivileged publication of a false and defamatory matter about another which tends to cause injury to a person's reputation. McCartney v. Oblates of St. Francis deSales (1992),80 Ohio App.3d 345, 353. Snyder has not identified a false or defamatory statement on the part of the city, nor has she alleged an unprivileged publication. She clearly did not create a genuine issue of material fact as to whether she had been defamed or entitled to a name-clearing hearing.
The third assignment of error is overruled.
 "IV. THE FAIRBORN CITY CHARTER DOES NOT COMPORT WITH THE OHIO CONSTITUTION IN REGARDS TO THE PERSONNEL BOARD OF REVIEW, CIVIL SERVICE, OR OTHER RELATED PROVISIONS AND IS THEREFORE IN VIOLATION OF THE OHIO CONSTITUTION, AND A NULLITY AS TO THESE PROVISIONS WHICH ARE IN ISSUE AT BAR, REQUIRING A FINDING FOR APPELLANTS."
Snyder asserts that the Fairborn Charter does not comport with the Ohio Constitution because it does not provide for a hearing for all public employees prior to termination. This argument was not raised in the trial court, and we need not consider a constitutional argument that is raised for the first time on appeal. Atkinson v. Grumman Ohio Corp. (1988), 37 Ohio St.3d 80, 82. Moreover, this argument is premised on Snyder's incorrect belief that even unclassified employees are entitled to such a hearing under the Ohio Constitution. We have discussed this issue supra.
The fourth assignment of error is overruled.
The judgment of the trial court will be affirmed.
BROGAN, J. and YOUNG, J., concur.